**Wallace Gene PAYNE, Appellant,**

v.

**Guyetta PAYNE, Respondent.**

**No. 63664.**

Supreme Court of Missouri,
En Banc.

June 8, 1982.

Gary Ratzlaff, Gordon R. Boyer, Lamar, for appellant.

James R. Bickel, Nevada, for respondent.

BARDGETT, Judge.

The application of respondent, Guyetta Payne, for transfer to the Supreme Court after opinion by the Missouri Court of Appeals, Western District, was sustained by this Court and the cause ordered transferred. Further briefs were filed and the ap-

peal argued. Portions of the court of appeals opinion are utilized herein.

The marriage of Wallace and Guyetta Payne was dissolved by decree dated October 18, 1979. On April 22, 1980, Guyetta moved to hold Wallace in contempt for failure to comply with that decree. The trial court so held, and from that contempt judgment [1] Wallace appealed and posted an appeal bond in the sum of $4,000 to insure satisfaction of the money judgments herein.

The dissolution decree approved and incorporated by reference a property settlement agreement between the parties, which provided in pertinent part as follows:

The husband shall pay to or for the wife the following:

.    .    .    .    .

3. $120.00 weekly to wife for support and maintenance, plus 15% of the sum of husband's total income for the preceding year (as shown on his Federal Income Tax Form 1040 before deduction for IRA payment) minus $6,240.00 ($120.00 weekly × 52 weeks), such additional support to be payable quarterly on March 31, June 30, September 30, and December 31 of

each year. The husband shall furnish wife copies of his Federal Income Tax Returns each year as they are filed by him.

Wallace's first and principal point on this appeal argues that the trial court misconstrued the provision just quoted. For his second point he contends that the quoted provision is unenforceable because it is based upon a contingency, and no execution could issue without external proof.

As to Wallace's point 1, the question is how the annual computation is to be made. Guyetta's interpretation, which is the one accepted by the trial court, says that Wallace's gross income should be reduced by $6,240 (the total of the weekly payments) and that Guyetta is then entitled to 15% of the remainder. Wallace, on the other hand, contends that 15% of his gross income should be calculated and from that product there is to be subtracted the sum of $6,240, leaving the difference as the supplemental amount, if any, due to Guyetta. The difference in result of these contrasting interpretations can best be understood by the following table of comparative computation:

| | Guyetta's Theory | | | Wallace's Theory |
|---|---|---|---|---|
| 1978 Gross Income | $40,904.35 | Gross Income | | $40,904.35 |
| Less weekly payments | −6,240.00 | Amount due at 15% | | 6,135.60 |
| | 34,664.35 | | | |
| Additional Annual Amount due at 15% | 5,199.65 | Less weekly payments | | 6,240.00 |
| Quarterly Amount Due 12/31/79 | 1,299.91 | Balance Due | | – 0 – |

[1]. The final paragraph of the judgment states:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that petitioner, Wallace Gene Payne, be and hereby is held to be in contempt of this Court and an order is to be issued out of this Court that said petitioner, Wallace Gene Payne, be ordered to pay to respondent, Guyetta Payne, the sum of $1,299.91 plus interest thereon at the legal rate from December 31, 1979, plus $1,779.32 plus interest thereon at the legal rate since March 31, 1980, and that in failure of payment of said sum that an order of commitment be issued out of this Court ordering

that said petitioner, Wallace Gene Payne, be seized and taken into the custody of the Sheriff of Vernon County, Missouri, to be incarcerated in the Vernon County Jail until such time as he has purged himself of said contempt by paying said sum. It is further ordered that petitioner, Wallace Gene Payne, pay to respondent, Guyetta Payne, on behalf of her attorneys, the sum of $350.00 for attorney fees. The costs of this action are hereby assessed against petitioner, Wallace Gene Payne.

DATED this 2nd day of September, 1980.

| Guyetta's Theory | | Wallace's Theory | |
|---|---|---|---|
| 1979 Gross Income | $53,688.62 | Gross Income | $53,688.62 |
| Less weekly payments | −6,240.00 | Amount due at 15% | 8,053.29 |
| | 47,448.62 | | |
| Additional Annual Amount due at 15% | 7,117.29 | Less weekly payments | 6,240.00 |
| | | Additional Annual Balance Due | 1,813.29 |
| First Quarter | 1,779.32 | First Quarter | 453.32 |

As shown above, Wallace insists that there was no amount to be tendered by him for the year 1978. He computes that he owes $1,813.29 on his 1979 income, payable quarterly in 1980. He did, in fact, make a payment for the first quarter in the amount of $453.32.

The trial court, holding to the contrary, determined that Wallace should have made a quarterly payment of $1,299.91 on December 31, 1979, with respect to his 1978 income, and that he should have paid a first quarter payment of $1,779.32, due March 31, 1980, on his 1979 income. Because of nonpayment by Wallace of these supplemental payments, the court held him to be in contempt.

The trial judge, who was the same judge that heard the dissolution case during which the property settlement agreement was considered, approved, and incorporated into the decree, held a hearing on the motion for contempt. Guyetta did not appear in person because she was ill. Guyetta's attorney placed in evidence the agreement which had been incorporated into the decree and which contains the maintenance provision set forth above. Wallace was called as a witness by Guyetta. He identified the agreement as the one he signed as well as several other documents among which were relevant federal income tax returns. On cross-examination by his own attorney, Wallace testified, over objection, to his understanding of the agreement. That understanding is set forth in the table above as "Wallace's Theory".

The trial court had before it the dissolution decree which included the provision noted supra regarding support and mainte-nance to be paid by Wallace; the testimony of Wallace regarding it, and the position of the parties as articulated by their attorneys. The issue presented required the trial court to decide the meaning of the maintenance provision of the decree and the credibility of Wallace's testimony regarding his understanding and was for the trial court's determination.

By its judgment, the trial court construed the maintenance provision to mean that Guyetta was entitled to receive from Wallace $120 per month ($6,240 per year) *plus* an additional sum that is arrived at by subtracting the $6,240 from Wallace's total income for the year and multiplying the balance by 15%. In so doing the trial court rejected Wallace's testimony concerning the maintenance provision of the dissolution decree, as the court had a right to do.

■ Wallace contends there was no evidence to support the trial court's decision because Guyetta did not testify. The maintenance provision itself constituted evidence in the cause and was adequate support for the trial court's determination of the matter. The decision of the trial court of the amounts due Guyetta from Wallace as set forth in the judgment will be sustained.

Wallace next contends the court erred "in figuring maintenance on a percentage of annual income because the maintenance judgment in the dissolution action was based on a contingency and was void and unenforceable because no executions could issue without external proof."

In support of this point Wallace cites *Brolinson v. Brolinson*, 564 S.W.2d 911 (Mo. App.1978). In *Brolinson* a former wife filed a petition to set aside allegedly fraudulent

conveyances made by her former husband to his present wife and a corporation. The obvious purpose of the suit was to satisfy a child support award of the dissolution decree by executing on the property previously conveyed by the former husband if the former wife were successful in obtaining a decree setting aside the conveyances. The child support provision of the decree ordered the former husband to pay former wife "($325.00) per month per child . . . subject to certain provisions as set forth in the Stipulation and Agreement relative to these payments as the children are in college and become emancipated." *Id.* at 912. The stipulation and agreement were not incorporated into the decree. The court stated:

> "[A] judgment must be sufficiently certain in its terms to be susceptible of enforcement in the manner provided by law. It must be in such form that the clerk may issue an execution upon which an officer is able to execute, *Bishop v. Bishop*, 151 S.W.2d 553, 557 (Mo.App. 1941), without requiring external proof and another hearing. If a judgment does not satisfy this requirement of certainty, it is null, void and unenforceable, *e.g., Sunderwirth v. Williams*, 553 S.W.2d 889 (Mo.App.1977)."

*Id.* at 913. The court then held the child support provision to be void and unenforceable.

However, in the later case of *Bryson v. Bryson*, 624 S.W.2d 92 (Mo.App.1981), the same court held the provision[2] of a separation agreement incorporated in the decree to be enforceable even though facially uncertain in amount.

In *Bryson*, Judge Snyder, writing for the court, reviewed the decisions under the for-

mer divorce law of Missouri and the new Dissolution of Marriage Act and set forth the changes that have taken place under the new act. The opinion in *Bryson* is well reasoned and sound. It should be read by those concerned with dissolution-of-marriage cases involving maintenance and support agreements and awards. Any attempt to summarize the rationale here would not do justice to the opinion.

The court in *Bryson* held that:

> [T]he maintenance provision of the decree to be a valid and enforceable judgment even though facially uncertain in amount. The trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and then, upon proper application proceed to enforce the judgment.

*Id.* at 98.

The provision of the maintenance order in *Bryson* is similar to the one in the instant case. Both require reference to the annual income of the obligor to determine the precise amount due at any given time. The income factor involves external proof and it is within the power of the trial court to receive such proof, to determine the exact amount due, and then enforce its judgment. *Id.* at 97. *Bryson* is the controlling authority in this matter and, to the extent *Brolinson* conflicts with *Bryson, Brolinson*, should no longer be followed.

■ The Court holds the support and maintenance provision of the dissolution decree in this case is valid and the trial court properly received into the evidence the income tax returns of Wallace to determine the exact amount due under the dissolution decree.

The matter of contempt must now be addressed.

---

**2.** Paragraph 3 of the parties' separation agreement read:

> "Petitioner James H. Bryson shall during the remainder of the joint lives of James H. Bryson and petitioner Janet R. Bryson or until remarriage of Janet R. Bryson pay to Janet R. Bryson the sum of Three Hundred Fifty ($350.00) Dollars per month for her support or a sum equal to Thirty-Three (33%) Per Cent of James H. Bryson's gross income from wages, whichever is greater.

> For the remainder of 1975 the sum to be paid is agreed to be Seven Hundred ($700.00) Dollars for each month. The determination of the gross income on which payment to Janet R. Bryson is to be calculated shall be made at the end of each year, beginning January 1976. The amount thus computed shall be paid in equal installments each month of the next succeeding year."
> 624 S.W.2d at 94 n.1.

In *Stanhope v. Pratt*, 533 S.W.2d 567, at 575 (Mo. banc 1976), this Court held "that trial courts are henceforth empowered to punish by imprisonment for contempt the failure of a person to comply with orders for payment of maintenance and child support." Trial courts were cautioned, however, with reference to the use of this drastic remedy and encouraged to require that conventional remedies be pursued before entering a contempt order for failure to comply with maintenance and support provisions of dissolution decrees and property settlement agreements incorporated therein. In *Stanhope* and *Teefey v. Teefey*, 533 S.W.2d 563 (Mo. banc 1976), and subsequent cases, the amount to be paid per period was specifically set out on the face of the decree or incorporated settlement agreement so that there was no question as to the requirements of the decree. There may have been an issue over whether or not the sums were paid but the amounts required by the court decrees were definite and certain on the face of the decree without reference to any other factors and hardly subject to any reasonable differences of opinion as to the meaning of the provisions. The issues in the contempt proceeding did not involve a disagreement over the construction or interpretation of the decree and property settlement nor the necessity of outside evidence (income evidence) to determine the precise amount called for by the decree.

■ It cannot be said that Wallace's alleged understanding of what the decree required of him was so unreasonable or far-fetched so as to constitute simply a bad faith excuse for not paying the sums the trial court, by its decision in this case, held the decree called for. To the contrary, Wallace's view was one that may have been arguably reasonable although legally incorrect.[3] This type of dispute will arise due to the more complicated provisions relating to future support and maintenance as are appearing in property settlements incorporated into dissolution decrees under the new Dissolution of Marriage Act. And, where the resolution of a reasonable dispute requires judicial interpretation of the provisions to arrive at the precise amount called for by the decree, a party ought not to be held in contempt simply because that party's understanding, although arguably reasonable, was legally incorrect. The type of dispute in this case lends itself to the procedure suggested in *Bryson, supra*, at 97, which is that a party, by motion, may move the court to construe the provisions and determine the exact amount due, and after making that determination, enforce the judgment. The sum arrived at is, of course, due under the original decree and properly should bear interest as of the date it should have been paid, as required by the trial court in this case. If the party required to pay wilfully and contumaciously refuses to obey the order, a contempt citation may be appropriate.

In *Bryson* the court said:

A citation for contempt under § 452.-325.5 could be filed, *Yeager v. Yeager*, 622 S.W.2d 339 (Mo.App., E.D., 1981); but if the amount due has not been ascertained the court could not hold respondent in contempt for failure to pay. Even if available, contempt is an uncertain remedy.

624 S.W.2d at 97.

The Court holds the order adjudicating Wallace in contempt of court issued as part of the judgment construing the decree and ascertaining the exact amount due was premature and will be vacated.

In *Keltner v. Keltner*, 589 S.W.2d 235 (Mo. banc 1979), this Court had before it a case where the trial court, on a motion for contempt, correctly adjudicated the amount called for by the decree and also held the former husband in contempt. This Court affirmed the judgment in all respects except for the contempt portion which was reversed.

The instant case presents a similar situation and, although the reasons for vacating the contempt order are different from those in *Keltner*, lends itself to similar disposition.

---

**3.** The court of appeals, by its opinion, agreed   with Wallace.

The conviction of appellant Wallace Payne for contempt is reversed. In all other respects the judgment of the circuit court is affirmed.

All concur.