Terri LAY (Grace), Appellant–
Respondent,

v.

Johnnie W. LAY, Respondent–Appellant.

No. 77966.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1995.

Rehearing Denied Jan. 23, 1996.

Ronald K. Barker, Kansas City, for Appellant–Respondent.

Edward F. Aylward, Kansas City, for Respondent–Appellant.

COVINGTON, Judge.

Johnnie W. Lay and Terri Lynn Grace, formerly Lay, both appeal from a trial court judgment granting Ms. Grace's motion for the award of attorney fees and extraordinary support expenses required for the couple's four minor children. After a hearing on the motion, the trial court entered judgment for Ms. Grace in the amount of $3,200.06 for extraordinary medical and dental expenses. The court further awarded her $370.11 for attorney fees incurred in connection with the motion but denied her claim for $5,629.89 in fees incurred in prior proceedings. Mr. Lay appeals the trial court's ruling awarding Ms. Grace extraordinary child support expenses. Ms. Grace appeals the denial of attorney's fees she incurred in prior proceedings. The Missouri Court of Appeals, Western District, affirmed. This Court granted transfer to consider only the question of whether the terms of the separation agreement relating to extraordinary medical, dental and hospital expenses were too vague and indefinite to be enforced. The judgment of the trial court is affirmed.

Ms. Grace filed for dissolution of her marriage to Mr. Lay on November 2, 1987. Later that month the couple entered into a separation agreement that granted custody of their four minor children to Ms. Grace. The agreement specifically required Mr. Lay to maintain hospitalization insurance for the children and to be responsible for all extraordinary medical, dental, and hospital expenses not covered by his insurance. The circuit court dissolved the marriage on December 11, 1987. In its decree, the trial court ordered Mr. Lay to continue to maintain medical and hospitalization insurance coverage for the parties' minor children. The court expressly found that the parties' separation agreement was not unconscionable and decreed that each party "is ordered to perform, execute and do each and all of those things required in the Separation Agreement."

## The Lay Appeal

In his appeal, Mr. Lay asserts that the trial court erred in awarding medical expenses because the terms of the separation agreement between the parties were not set forth in full in the dissolution decree. Alternatively, he contends that the terms of the separation agreement regarding medical expenses were overly vague and indefinite such that the court was without jurisdiction to enforce it.

Mr. Lay first maintains that the trial court erred by enforcing the extraordinary medical expense provision of the separation agreement because the terms of the agreement were not fully incorporated into the dissolution decree. The argument is without merit.

In 1974, the General Assembly specifically authorized the use of separation agreements as part of the Dissolution of Marriage Act. Section 452.325, RSMo 1994, which governs the terms required in an agreement and the enforcement of such agreements, reads in pertinent part:

4. If the court finds that the separation agreement is not unconscionable as to support, maintenance, and property:

(1) Unless the separation agreement provides to the contrary, its terms shall be set forth in the decree of dissolution or legal separation and the parties shall be ordered to perform them; or

(2) If the separation agreement provides that its terms shall not be set forth in the decree, only those terms concerning child support, custody and visitation shall be set forth in the decree, and the decree shall state that the court has found the remaining terms not unconscionable.

 Prior to the enactment of the Dissolution of Marriage Act, a separation agreement to provide support such as the one in this case was enforceable only in a separate action under traditional contractual remedies.

In contrast, under the statute and absent an expressed intent to the contrary, "[u]nless the court finds the terms of the agreement to be unconscionable, they are binding on the court ... [and] are to be incorporated into the court's decree." *Haggard v. Haggard*, 585 S.W.2d 480, 482 (Mo. banc 1979). Neither the agreement nor the decree in this case provides an expressed intention to prevent the agreement from being incorporated into the decree. The trial court at dissolution found the agreement was not unconscionable and specifically ordered Mr. Lay and Ms. Grace to "perform, execute and do each and all of those things required in the Separation Agreement." The terms of the agreement were, therefore, "enforceable by all remedies available for the enforcement of a judgment...." § 452.325.5, RSMo 1994.

Mr. Lay alternatively contends that the language of the separation agreement regarding his obligations for the children's extraordinary medical expenses is overly vague and incapable of ascertainment. The provisions in the incorporated agreement regarding medical expenses are as follows:

> 6. *Medical Insurance and Expenses.* The Non–Custodial Parent shall maintain, either through his place of employment or independently, a hospitalization insurance policy covering the minor children of the parties during the period of his support obligation. The Non–Custodial Parent shall further be responsible for all extraordinary medical, dental and hospital expense required for said minor children. "Extraordinary" for the purposes of this Agreement shall be defined as anything not covered by the Non–Custodial Parent's hospital insurance and, in addition, any medical expenses incurred on behalf of the minor children which exceed twenty dollars ($20.00) per month, per child, per illness. The Custodial Parent agrees to confer with the Non–Custodial Parent before incurring orthodontist expenses.

Mr. Lay argues that, because the phrase "medical, dental and hospital expense" was not defined in either the agreement or the decree, the provision is indiscernibly broad and the trial court's judgment is, therefore, unenforceable.

In support of his contention, Mr. Lay cites to *Rodden v. Rodden*, 527 S.W.2d 41 (Mo. App.1975), which holds that a judgment, to be enforceable, must be sufficiently definite to be determined precisely by ministerial officers, without a hearing or the consideration of extrinsic evidence.

In *Rodden* the court held as unenforceable a divorce decree provision requiring that the noncustodial parent pay "all extraordinary medical expenses." *Rodden*, 527 S.W.2d at 43. Noting the general rule that a money judgment must specify with certainty and definiteness the amount for which it is rendered without necessitating external proof, the court held that the provision was too indefinite to be enforced. "[The] plaintiff would be required to bring in external proof of specific extraordinary medical expenses, thereby making the provision void." *Id.* at 44; *see also Brolinson v. Brolinson*, 564 S.W.2d 911, 913 (Mo.App.1978) *overruled in part by Payne v. Payne*, 635 S.W.2d 18, 22 (Mo. banc 1982) ("[Dissolution decree] must be in such form that the clerk may issue an execution upon which an officer is able to execute ... without requiring external proof and another hearing.").

The rationale of *Rodden* has been undermined and discredited by subsequent case law. This Court, in *Payne v. Payne*, 635 S.W.2d 18 (Mo. banc 1982), rejected a similar argument in the context of a maintenance and support provision within a separation agreement, which was subsequently incorporated into a dissolution decree. The decree in *Payne* incorporated by reference a settlement agreement between the parties requiring that the husband pay "$120.00 weekly to wife for support and maintenance, plus 15% of the sum of husband's total income for the preceding year...." *Id.* at 20. The wife received a contempt judgment against her former husband for failure to comply with the dissolution decree. On appeal, the husband argued that the judgment was void and unenforceable for the reason that the original decree was based on a contingency and no execution on the judgment could proceed without external proof of the exact amount due. *Id.* at 21.

Although the terms of the agreement in *Payne* were uncertain on its face, this Court found that the Dissolution of Marriage Act permitted a trial court to consider external evidence to determine the exact amount due, expressly adopting the reasoning of *Bryson v. Bryson*, 624 S.W.2d 92, 97 (Mo.App.1981). *Payne*, 635 S.W.2d at 22. In upholding as enforceable a facially uncertain maintenance provision, *Bryson* rejected the line of cases holding a dissolution decree void and unenforceable if it is indefinite or uncertain. *Bryson*, 624 S.W.2d at 96. Instead, the *Bryson* court held that, if a maintenance provision is part of a decree, it is a valid judgment enforceable under the Dissolution of Marriage Act "by all the remedies available for enforcement of a judgment." *Id.* at 96, (citing § 452.325.5, RSMo 1994). By having the parties present evidence of the exact amounts due under the terms of the incorporated agreement, "[t]he trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and then, upon proper application proceed to enforce the judgment." *Payne*, 635 S.W.2d at 22, (quoting *Bryson*, 624 S.W.2d at 98). Although *Bryson* involved a maintenance decree, this Court later specifically extended its rationale to child support awards. *Toomey v. Toomey*, 636 S.W.2d 313, 316 (Mo. banc 1982). Under *Toomey* and *Payne*, if a dissolution decree's terms are uncertain or lack specificity on their face and either a settlement agreement is incorporated into the decree, such that a motion and hearing would determine the exact amount due, or the decree itself can be made certain through evidence adduced after a motion and hearing, the decree is sufficiently certain so as to be enforceable. *Echele v. Echele*, 782 S.W.2d 430, 436 (Mo.App.1989). It is clear that the law of this state no longer requires that support and maintenance provisions of dissolution decrees be so definite in amount that extrinsic evidence is absolutely unnecessary. The rationale in *Rodden* upon which Mr. Lay would have this Court rely is outdated and has been overruled. *See Payne*, 635 S.W.2d at 22 (*overruling in part Brolinson v. Brolinson*, 564 S.W.2d 911 (Mo.App. 1978)).

■ Applying the principles set forth above, this Court must examine the order presently at issue. The term "extraordinary" is defined within the agreement itself. Disposition of the issue, then, turns upon whether the term "medical expenses" as used in the dissolution decree provides sufficient definiteness and certainty so as to allow the decree's enforcement. So long as the provision contains criteria from which the court, upon a hearing, can determine without difficulty the obligations of the respective parties, the provision is enforceable. *Graf v. Bacon*, 800 S.W.2d 88, 90 (Mo.App.1990).

When the court of appeals has had occasion to apply the *Bryson* test to the term "medical expenses" in a dissolution decree, it has generally held the term too vague and indefinite to be enforced. *See, e.g., Hatch v. Hooten*, 851 S.W.2d 103, 108 (Mo.App.1993); *Rogers v. Rogers*, 803 S.W.2d 92, 97 (Mo.App. 1990). *But see Witzke v. Witzke*, 662 S.W.2d 873, 874 (Mo.App.1983) (holding provision to "pay all medical and dental bills ... not covered by said insurance" as clear and neither ambiguous nor uncertain). In *Hatch*, the court expressed strong reservations about the uncertainty of the nature and scope of the obligation expressed merely by the term "medical expenses." *Hatch*, 851 S.W.2d at 108 (holding under *Payne* that "all medical" expenses in a dissolution decree provides "no limiting criteria whatsoever.").

■ This Court disagrees with the holdings of the cases finding that the term "medical expenses" is too vague to be enforced. The term "medical expenses" in a dissolution decree is subject only to a plain and unambiguous definition, a solution which, under the rationale of *Bryson* and *Payne*, is more reasonable and practicable. As the court of appeals stated in this case in the unpublished opinion authored by the Honorable Patricia Breckenridge:

Thousands of reasonable average persons have used the words "medical expenses" in their separation agreements and dissolution decrees, with the intention that it embody the phrase's common meaning. The expectation of such persons in utilizing the words "medical expenses" in a dissolution decree is not to have conceptualized each

particular medical item to be covered, but rather to have generally incorporated items falling within the limiting criteria of such a definition.

Inherent in the common understanding of the meaning of "medical" expenses are logical parameters, namely that they are "of, relating to, or concerned with the practice of medicine." Webster's Third New International Dictionary 1402 (1966). "Medicine" is further defined as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease." *Id.*

■ Everyday usage of the term "medical expenses" is not the only available standard. The Internal Revenue Code defines "medical care" in the context of tax deductions for medical or dental expenses:

(d) Definitions.—For purposes of [section 213]

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or

(C) for insurance ... covering medical care referred to in subparagraphs (A) and (B).

I.R.C. § 213(d) (1988). The Code excludes from its definition cosmetic surgery directed solely to the improvement of the patient's appearance that "does not meaningfully promote the proper function of the body or prevent or treat illness or disease." I.R.C. § 213(d)(9)(B) (1988 & Supp. V 1993). Similarly, this Court would construe the term "medical expenses" to carry with it the implied qualification that the term covers only that conduct that is reasonable and necessary to diagnose, treat, or prevent any ailment or disease that affects the body or a function of the body. Of course, parties are free to define further their medical expense provisions in order to fit more precisely their situations. This Court is confident, however, that everyday usage of the term, supplemented by the Internal Revenue Code's definitions, will sufficiently guide parties on this issue in the future.

To require that every dissolution decree set out with precision each and every affliction, injury, procedure, or emergency medical expense needed to be covered by the agreement is unreasonable. Counsel and the trial court should not be required to draft dissolution documents to anticipate and reduce to writing each and every possible childhood ailment or medical procedure that might arise in the future. The nature of the need for medical care is that it is in most instances unpredictable. Neither the parties nor the trial court should be required to incorporate whole medical texts within their dissolution agreements and decrees. This Court holds, therefore, that the term "medical expenses" provides limiting criteria sufficient for the trial court to determine the parties' obligations, such that the decree is valid and enforceable. To the extent *Rodden* and its progeny may be read to require more specificity in a medical expense provision within a separation agreement that has been incorporated into a dissolution decree subsequent to the Dissolution of Marriage Act, they are overruled. To the extent *Hatch v. Hooten,* 851 S.W.2d 103 (Mo.App.1993), and its progeny may be read to conflict with this opinion, they are overruled.[1]

---

1. The court in *Hatch* was faced with the interpretation of a provision in a dissolution decree similar to the one at issue in the present case, requiring the noncustodial parent to "pay all medical expenses" not covered by insurance. *Hatch,* 851 S.W.2d at 105. Citing the rule this Court set forth in *Payne,* the court in *Hatch* held that child support and maintenance provisions of dissolution decrees need not be so definite that a ministerial officer could determine the amount owing without resort to extrinsic evidence, "so long as the provision contains criteria from which the court upon a hearing could determine the obligation of the parties." *Id.* 851 S.W.2d at 108 (quoting *Graf v. Bacon,* 800 S.W.2d 88, 90 (Mo. App.1990)). After correctly stating the rule, however, the *Hatch* court went on to hold that the "all medical expense" language does not provide any limiting criteria whatsoever that, under *Payne,* would allow a trial court to determine the exact amounts the parties contemplated in their agreement. *Hatch,* 851 S.W.2d at 108. This Court overrules *Hatch* to the extent it holds that the phrase "all medical expenses" provides insufficient limiting criteria for a trial court to

The trial court properly applied the plain and ordinary meaning of the decree's language in finding that the expenses claimed by Ms. Grace were in fact extraordinary medical expenses under the separation agreement. The parties' agreement sufficiently complied with enforceable standards.

### The Grace Appeal

In her cross-appeal, Ms. Grace asserts error in the trial court's denial of her request for attorney fees incurred in prior contempt proceedings. In September of 1991, Ms. Grace filed a motion seeking an order of contempt against Mr. Lay. The trial court declined to hold Mr. Lay in contempt but did order him to return the couple's oldest child to Ms. Grace's custody. The court concluded the proceeding with the following statement: "I would also say to you, Mr. Lay, if it had been requested, you would be paying considerable attorney fees because it's your conduct that brought everybody here. But it wasn't requested so I can't order it." The trial court in the present action refused to award Ms. Grace the attorney fees in relation to this previous proceeding because her motion for contempt was denied and "those proceedings have concluded and this court does not have jurisdiction to do so." Ms. Grace asserts that the trial court possessed the jurisdiction and authority to award her necessary and reasonable fees.

▬ In affirming the trial court's decision, and being in agreement with the court of appeals' disposition of this issue, this Court sets forth verbatim and adopts the portion of the unpublished opinion of the court of appeals addressing the issue:

Ms. Grace argues that she was entitled to obtain her attorney fees incurred for the prior proceedings in the current proceeding by virtue of the separation agreement. The agreement provided that if either she or Mr. Lay defaulted in the performance of any of the terms, provisions, or obligations set forth in the agreement such that it became necessary to institute legal proceedings to effectuate the performance of the agreement, then the party found to be in default would pay all expenses incurred

determine, in a *Payne* hearing, the exact amounts

in connection with the enforcement proceedings, including reasonable attorney fees. Ms. Grace directs this court's attention to *Obermiller v. Obermiller,* 795 S.W.2d 624, 625–26 (Mo.App.1990), which declares that stipulations as to attorney fees in settlement agreements are binding upon the courts unless they are found to be unconscionable.

Ms. Grace correctly states the general rule. Indeed, a provision for attorney fees quite similar to the one in this case has been found to entitle the successful litigant to attorney fees and costs. *See Gibson v. Gibson,* 687 S.W.2d 274, 276 (Mo.App.1985) (where the separation agreement provided "that each party would indemnify the other for all litigation expenses, including reasonable attorney fees, incurred by either party because of the failure of the other party to carry out the terms of the agreement"). However, in none of the cases cited by Ms. Grace did the party seeking attorney fees pursuant to a separation agreement try to recover those fees in a subsequent proceeding.

Ms. Grace is barred from obtaining attorney fees for the prior proceedings by the doctrine of res judicata and the related prohibition against splitting a cause of action. The doctrine of res judicata precludes parties from contesting matters that the parties have had a full and fair opportunity to litigate. *Fleming v. Mercantile Bank & Trust Co.,* 796 S.W.2d 931 (Mo. App.1990). Res judicata applies "not only to points and issues upon which the court was required by the pleadings and proof to form an opinion and pronounce judgment, but to every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might have brought forward at the time." *King Gen. Contr. v. Reorganized Church,* 821 S.W.2d 495, 501 (Mo. banc 1991).

The doctrine of res judicata takes on the character of the rule against splitting a cause of action. *Id.* As the court of ap-

owed by the parties.

peals in *Burke v. Doerflinger*, 663 S.W.2d 405 (Mo.App.1983), noted:

> Res judicata and splitting a cause of action are closely related because both are designed to prevent a multiplicity of lawsuits.
>
> A cause of action which is single may not be split and filed or tried piecemeal, the penalty for which is that an adjudication on the merits in the first suit is a bar to a second suit. In general, the test for determining whether a cause of action is single and cannot be split is: 1) whether separate actions brought arise out of the same act, contract or transaction; 2) or whether the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. The word "transaction" has a broad meaning. It has been defined as the aggregate of all the circumstances which constitute the foundation for a claim. It also includes all of the facts and circumstances out of which an injury arose.

*Id.* at 407 (citations omitted).

Res judicata has been applied in the context of a request for attorney fees in a dissolution action in which there were multiple proceedings. In *Potter v. Desloge*, 625 S.W.2d 927 (Mo.App.1981), a husband filed a motion to modify a decree of dissolution. In response, his former wife filed a motion for attorney fees, costs, and expenses to defend the husband's motion. The trial court dismissed the husband's motion to modify and awarded the wife costs, but did not grant or mention attorney fees or other expenses. *Id.* at 928–29. The husband then appealed the denial of his motion to modify. *Id.* at 929. Rather than file a cross-appeal on the court's failure to grant her motion for attorney fees for the modification, the wife filed another motion for attorney fees, requesting fees for both the original defense of the husband's motion to modify and for the husband's appeal. *Id.* After a hearing on the wife's motion, the trial court granted the wife $12,500 in attorney fees. *Id.*

The husband appealed the award of attorney fees, contending that the first decision by the trial court in which the court did not grant or mention attorney fees was res judicata on the issue of attorney fees for the wife's defense of the motion to modify. The court of appeals agreed with the husband, noting that "[u]nder the doctrine of res judicata a judgment between two parties is conclusive as to all issues of fact before the court whether or not a particular issue was actually considered." *Id.* The court of appeals found that "[the wife's] first motion for attorney fees was properly before the trial court when it ruled on [the husband's] amended motion to modify. The trial court failed to grant attorney fees. It follows that the issue of attorney fees for the trial of the motion to modify had been adjudicated." *Id.* at 930.

The separation agreement in the instant case provided that the party found to be in default in any enforcement proceedings would be responsible for reasonable attorney fees. Thus, Ms. Grace's motion for attorney fees in connection with the contempt proceedings arose out of the same act or event as her prior motion for an order of contempt—Mr. Lay's failure to abide by the terms of the separation agreement by refusing to return the parties' oldest daughter to Ms. Grace's custody. Both the contempt motion and the motion for attorney fees involved the same parties, and the subject matter and evidence necessary to sustain the claims were basically the same in both proceedings, as a finding that Mr. Lay had failed to abide by the agreement was vital to both actions.

Ms. Grace was aware of all of the basic facts surrounding her claim for attorney fees incurred in the prior contempt proceedings at the time of those proceedings. "It was incumbent upon her, and her attorney, to plead all grounds, theories, and counts in the first lawsuit." *Adams by Northcutt v. Williams*, 838 S.W.2d 71, 73 (Mo.App.1992). *See also King Gen. Contr.*, 821 S.W.2d at 502–03, (Blackmar, J., concurring) ("When a plaintiff makes claims based on a particular transaction, and the case goes to trial, the plaintiff is obliged to set forth all claims and variations arising out of the transaction. All other claims against parties to the litiga-

tion which could have been stated in the petition are precluded.").

As the Southern District stated in *S.M.B. by W.K.B. v. A.T.W.*, 810 S.W.2d 601, 604 (Mo.App.1991), "[w]e know of no legal principle which empowers a court to award fees to an attorney in one case for work done in another case, without some demonstrated compelling reason to do so." Ms. Grace did not offer a compelling explanation for why she failed to ask for attorney fees in the prior proceeding. Her failure to request attorney fees during the prior proceeding precludes her from seeking such attorney fees. *Id.* at 605.

In all respects, the judgment of the trial court is affirmed.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH, ROBERTSON, JJ., and GUM, Senior Judge, concur.

WHITE, J., not participating because not a member of the Court when case was submitted.