James A. SCHRINER, Appellant,

v.

Barbara J. EDWARDS, Respondent.

No. WD 59427.

Missouri Court of Appeals,
Western District.

Submitted Dec. 5, 2001.

Decided Feb. 13, 2002.

Before HOWARD, P.J., and
BRECKENRIDGE and NEWTON, JJ.

### Order

Katharine Susanne Shepherd–Porter, Liberty, for appellant.

Barbara J. Edwards, St. Joseph, for respondent.

Before JAMES M. SMART, JR., P.J.; HAROLD L. LOWENSTEIN, and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Presiding Judge.

James A. Schriner appeals the judgment on a motion to modify child support. Schriner (Father) contends on appeal that the trial court erred in its rulings as to child support and as to extraordinary medical expenses. We affirm in part and reverse in part.

Barbara Edwards (Mother) and Father were divorced in April of 1987 in Illinois. Mother was awarded custody of the minor children, Alexander J. Schriner (Alex), born June 30, 1982, and Katherine C. Schriner (Kate), born June 25, 1985, subject to Father's visitation rights. Father was ordered to pay child support in the amount of $750.00 per month; maintain medical insurance on the children; pay college expenses for the children; and pay for all ordinary and all extraordinary medical and dental expenses not covered by insurance.

After the initial decree, Mother moved to St. Joseph, Missouri, while Father relocated to New Jersey. Mother filed a motion to modify in March of 1999. Mother then filed an amended motion to modify on June 12, 2000, adding allegations regarding a motor vehicle accident in which Alex was involved, causing him to suffer paraplegia. In response, Father filed a motion on October 18, 2000, requesting child support be paid directly to the minor child and a motion requesting a summary of expenses paid on behalf of the children, which was denied by the court.

Mother is currently employed by the St. Joseph School District as an elementary

art teacher. Father is an equity owner in the business consulting side of Deloitte & Touche. Father's income is approximately $250,000 per year.

At the time of trial, Alex was 18, Kate was 15. Alex resided with his Mother until he began college in August 2000 at the University of Nebraska at Lincoln. Kate was a sophomore in high school. The automobile accident, which paralyzed Alex from the chest down, occurred in September of 1999. Most of Alex's recurring expenses are paid by insurance. Father pays approximately $14,000.00 per year for Alex to attend college.

At trial, Father's Form 14 showed a presumed child support amount of $1,657.00 per month, while Mother's Form 14 reflected a child support amount of $1,666.00. The judgment entered by the trial court ordered child support increased to $1,850.00 per month, added an additional sum of $400.00 per month to be paid directly to each child, and included a judgment against Father for $20,675.00 as reimbursement for Alex's extraordinary medical expenses and for court cost. The remaining provisions of the prior order remained in effect. Neither party requested findings of fact or conclusions of law. Father appeals from the judgment.

 An appellate court will not disturb an order modifying a child support obligation unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Haden v. Riou*, 37 S.W.3d 854, 860 (Mo.App.2001). A judgment will be set aside on the basis that it is against the weight of the evidence only with caution and when there is a firm belief that the trial court's judgment is wrong. *Id.* (citing *Morton v. Myers*, 21 S.W.3d 99, 104 (Mo.App.2000)). "An award of child support is within the sound discretion of the trial court." *Thill v.*

*Thill*, 26 S.W.3d 199, 207 (Mo.App.2000). "We afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision." *Morton*, 21 S.W.3d at 104. Thus, " '[w]e will not substitute our judgment for that of the trial court absent a manifest abuse of discretion and will not disturb an award of child support unless the evidence is "palpably insufficient" to support it.' " *Haden*, 37 S.W.3d at 860 (quoting *Thill*, 26 S.W.3d at 207).

Father alleges, first, that the trial court erred because it failed to accept either party's Form 14 or calculate the correct presumed child support amount utilizing Form 14. Father argues that Rule 88.01 requires the trial court to (1) calculate and find for the record the presumed child support amount utilizing Form 14; and (2) make a proper record why the presumed child support amount should be rebutted. Father argues that, here, the trial court did not accept either party's Form 14 and did not find for the record what the correct amount was by using a Form 14, but rather made an "equitable" allocation. Mother argues that court accepted both parties' Form 14s finding her figure of $1,657.00 and Father's figure of $1,616.00 to be practically identical. The court then, Mother argues, rebutted the presumed amount and determined the appropriate amount of child support.

 In *Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo.App.1996), this court determined that the intent of the Missouri Supreme Court in establishing Rule 88.01 was to establish a two-step process to determine child support. This court stated:

[W]e find the intent of the Supreme Court in establishing Rule 88.01 was to provide a two-step procedure to determine child support. In step one, the trial

court is required to determine and find for the record the presumed correct child support amount pursuant to a correct Form 14 calculation. Step one is a mathematical calculation the mandatory use of which insures that the child support guidelines will be considered in every case as mandated in § 452.340.7 and Rule 88.01. In step two, the trial court is required to consider whether to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors. § 452.340.8; Rule 88.01. Step two permits the trial court to exercise its broad and sound discretion in the final determination of child support awards.

*Id.* at 379. Here, the trial court in its finding of fact noted that "[t]he parties calculated presumed child support at $1,666 (Resp.)[Mother] and $1,657 (Pet.)[Father]." The court then stated, "The PSC (sic) amount is governed by the maximum amount on the Chart in Rule 88." In other words, by using the rule, the trial court found the presumed amount of child support would be the maximum amount allowed under the chart in Rule 88. However, "Rule 88.01 creates a rebuttable presumption that the amount of child support calculated pursuant to Form 14 is the proper amount to be awarded, but provides that the presumption may be rebutted if the court enters a finding that the amount calculated is 'unjust or inappropriate.'" *Brooks v. Brooks*, 21 S.W.3d 834, 837 (Mo.App.1999). "A written finding that the Form 14 amount, after considering all relevant factors, is 'unjust or

inappropriate' will overcome this presumption." *Waite v. Waite*, 21 S.W.3d 48, 52 (Mo.App.2000). "The trial court has broad and sound discretion in considering whether to rebut the presumed correct child support amount." *Id.* (citing *Woolridge*, 915 S.W.2d at 379). "The trial court is not required to enter written findings which include the numbers used to calculate the child support as well as the factors which make the Form 14 amount inappropriate." *Id.* (citing *In re Marriage of Cohen*, 884 S.W.2d 35, 39 (Mo.App. 1994)).[1] "In the absence of a request for findings, Rule 88.01 requires only a written finding or a specific finding on the record that the amount calculated pursuant to the guidelines would be unjust or inappropriate in a specific case." *Cohen*, 884 S.W.2d at 39. Here, the trial court indicated that the child support under Form 14 would be the maximum allowed by the chart. The court then determined that amount would be "unjust and inequitable."

### Failure to Make Finding of "Unjust or Inappropriate"

■ Father argues that when the court stated the presumed child support amount was "unjust and inequitable," the trial court created its own standard. Father further argues that this was a misapplication of the law in that Rule 88.01 and § 452.340.9 RSMo require a finding of "unjust or *inappropriate.*" Father does not cite a case where the use of "unjust and inequitable" is found to be a misapplication of law, or otherwise reversed. Mother

---

**1.** *Cohen* distinguishes three Western District cases that implied the court must make a written finding, including the numbers used to calculate the child support, as well as a specific Form 14. Those cases, *Harding v. Harding*, 826 S.W.2d 404, 407 (Mo.App.1992); *Clare v. Clare*, 853 S.W.2d 414, 415 (Mo.App. 1993); and *Summerville v. Summerville*, 869 S.W.2d 79, 83 (Mo.App.1993), are to be disregarded to the extent their holdings required the court to make written findings and provide its own Form 14. *See Scoggins v. Timmerman*, 886 S.W.2d 135, 139 (Mo.App. W.D. 1994).

does not appear to respond to this subpoint.

In *Al–Yusuf v. Al–Yusuf*, 969 S.W.2d 778, 787 (Mo.App.1998), the trial court entered an order which deviated from the Form 14 amount, while making a finding only that the chart amount was unjust. Apparently, the appellant argued that it was reversible error to use only the word "unjust" without a reference to "inappropriate." In a footnote, this court responded to the argument, stating:

> .... Appellant cites no authority for this argument, and we find none. The requirement is that the court must find that the Form 14 amount is unjust *or* inappropriate, not unjust and inappropriate. In any event, the Form 14 amount could hardly be appropriate if it were unjust, and could hardly be just if it were inappropriate. Thus, use of one word necessarily implies and encompasses the other in this context.

*Id.* at 787 n. 4. Here, the trial court found that the Form 14 chart amount was unjust, even if did add the additional verbiage "and inequitable." Because "unjust" also encompasses the term "inappropriate," the trial court met the obligations of Rule 88.01 and § 452.340.9 RSMo. The additional language was merely commentary by the trial court.

### Failure to Delineate Grounds

■ Father also alleges that the trial court erred by failing to indicate that it had considered all relevant factors and did not state the basis for its finding that the presumed child support amount was unjust or inappropriate. Citing *Summerville v. Summerville*, 869 S.W.2d 79, 83 (Mo.App. 1993), Father argues that when the trial court deviates from the Form 14 amount, the record must exhibit the factors that warrant the deviation. Father claims that the judgment stated only that the amount

was "unjust and inequitable" without specifying the factors which made it so. Father then quotes § 452.340.9, which provides:

> .... A written finding or specific finding on the record in a judicial .... proceeding that the application of the guidelines would be unjust or inappropriate in a particular case, after considering all relevant factors, including the factors set out in subsection 1 of this section, is required if requested by a party and shall be sufficient to rebut the presumption in the case. The written finding or specific finding on the record shall detail the specific relevant factors that required a deviation from the application of the guidelines.

We note that the statute uses the phrase "if requested by a party" in reference to the concept of a requirement of a specific finding. Father then argues that while neither party requested findings, the court should have listed the factors it considered because of the complexity of this case. Father then sets out what he believes the evidence showed for each of the statutory factors. Mother responds by arguing that if the judgment is examined in its entirety, the record does reveal the relevant factors in the court's findings.

Father, in effect, is asking this court to find that the trial court erred in failing to make specific findings of fact on each of the statutory factors because of the complexity of the case, even though Father failed to make a request for the findings of fact. "In the absence of a request for findings, Rule 88.01 requires only a written finding or a specific finding on the record that the amount calculated pursuant to the guidelines would be unjust or inappropriate in a specific case." *Cohen*, 884 S.W.2d at 39. Absent a request for findings, the trial court is not required to set out the factors which make the amount inappropri-

ate. *Id.* Finally, as Mother's brief points out, the record—in this case the judgment—reveals what factors the trial court considered when the judgment is read as a whole rather than as a single paragraph. The trial court considered the financial needs and resources of the children, the standard of living the children would have enjoyed had the marriage not been dissolved, the physical and emotional condition of the children and their emotional needs and the financial ability of the parents to provide for the children. The court also considered whether child support was being used to accumulate assets. The factors considered by the court were supported by evidence presented at trial and, thus, the evidence was not palpably insufficient to support the award.

### Variable Expenditures Adjustment

In sub-point (d) of his first point, Father claims: "The trial court failed to adjust one of the minor children's duplicated variable expenditures which vary directly with the amount of time he spends with respondent, which represent 38% of the basic child support amount, as required by the directions for completion of Form 14 of the Missouri Supreme Court Rule 88.01." We assume Father is arguing that the trial court failed to consider that since Alex is away at college, Mother is not incurring his variable expenditures and, thus, the trial court erred in not reducing Alex's portion of the child support by 38%. Father argues that the notes and commentary to Form 14 provide guidance for the circumstance when one of the children is away at school in another state. Father then quotes the assumption on variable expenditures. However, Father fails to quote the limiting language of the subsection where that assumption is stated. The proper reading would be as follows:

The relevant factors and assumptions used to calculate the child support guidelines include:

\* \* \*

(12) With respect to the adjustment for a portion of amounts expended by the parent paying support during periods of overnight visitation or custody:

The basic child support amount can be divided into three categories of expenditures:

*Variable expenditures* are child related expenditures that vary directly with the amount of time a child spends with each parent, such as food. It has been assumed that variable expenditures represent 38% of the basic child support amount.

\* \* \*

Directions, Comments for Use and Examples for Completion of Form No. 14—Assumption (12).

 The assumption regarding variable expenditures relates to the circumstance that arises when one parent has an extended visitation and there is a need to adjust the presumed child care amount because the non-custodial parent incurs food and other variable costs of the child. Father cites no cases which state that the court must apply the 38% reduction for variable expenses when a child is at an institution of higher learning. Rather, he cites cases only for the proposition that child support must be reasonable and necessary; is not to provide an accumulation of capital; and the amount must be balanced against the parent's ability to pay and the family's standard of living. The trial court here made a specific finding that there was no evidence of accumulation of capital, and that he was ordering the higher child support specifically because the children had the right to enjoy the higher standard of living they would have enjoyed but for the divorce. Point I, in-

cluding the sub-points described herein, is denied.

## Direct Payment to Minor

In his second point, Father alleges: "The trial court erred in ordering payment of child support directly to a fifteen-year-old child because it is not provided by § 452.340.5 R.S.Mo. and is against public policy, in that such is not in the child's best interest and would not promote the welfare of the child." Father argues that the statute allows direct payment of child support only if the child is in an institution of higher education. Because Kate, age 15 at the time of trial, was still in high school, the judgment was a misapplication of the law. Additionally, Father argues that such an award is in violation of the probate code, which would require an appointment of a conservator for funds awarded to a minor. Father also argues that while Alex can receive a portion of the child support directly, the $400.00 should have come from the child support amount and not as an additional amount.

Mother acknowledges that the award of the $400.00 to Kate was not authorized and that the judgment should be remanded to remove this award. Mother does not address that part of Father's argument which speaks to whether the $400.00 should have come out of the awarded child support rather than as an additional amount.

Father also apparently attempts to complain concerning the support to be paid directly to Alex. However, the point relied on does not refer to the monies ordered directly to Alex and, thus, does not preserve the issue for appeal. Issues raised only in the argument portion of a brief are not preserved for review. *Short v. Short,* 947 S.W.2d 67, 72 (Mo.App. 1997). The argument also does not cite any authority that such an award is not allowed as it relates to Alex. Thus, the issue is not preserved. *See In re Marriage of Hershewe,* 931 S.W.2d 198, 205 (Mo.App.1996). Other than complaining that the money should have been taken out of the child support award as opposed to an additional amount, Father makes no legal argument why the award was incorrect or improper. The trial court in its judgment stated that Father is to pay $400 per month directly to each of the children "as additional child support, to enhance their living standard as provided in § 452.340(3) RSMo." We are not sure that "enhancing a living standard" in a case such as this, where Father is to pay child support at a level which is off the chart, and where Father pays all college expenses for the child, is appropriate. In such a case, it is not clear that the additional $400 is "reasonable or necessary" as required by § 452.340 RSMo. Here, however, because the record shows that Alex suffers from paraplegia, and because the trial court referred to additional expenses caused by that condition, we will assume the trial court could reasonably believe the additional amount was necessary for that purpose. Therefore, we will not disturb this part of the award. Father does not give a legal reason or cite authority prohibiting a court from making such an award.

## Extraordinary Medical Expenses

Point III has three sub-points related to the court's rulings on extraordinary medical expenses. First, Father argues that the award to Mother of the sum of $20,675.00 for extraordinary medical expenses stemming from Alex's accident was in error because the inclusion of expenses to make Mother's house accessible, for car hand controls, and for Mother's lost wages while tending to Alex, does not meet the definition of extraordinary medical ex-

penses as defined in the case of *Lay v. Lay,* 912 S.W.2d 466 (Mo. banc 1995). Father argues that these expenses were not contemplated by the divorce decree and are not encompassed by the language requiring him to pay extraordinary medical and dental expenses not covered by insurance. Father further argues that compensating Mother for the time she took off after the accident to care for Alex is plain error. Mother's response is that the expenses are included in the definition of medical expenses under the provision of the Internal Revenue Code that *Lay* referred to, as that provision has been interpreted by case law.

The judgment can be broken down as follows:

```
$ 16,800.00 accessibility remodeling to Mother's home
 575.00 car hand controls
 8,300.00 care provided to Alex by Mother
 25,675.00
 − 5,000.00 credit from car insurance (medical payments coverage)
$ 20,675.00 judgment against Father
```

Father agues that the Missouri Supreme Court case of *Lay v. Lay defined* the term "medical expenses." While the case actually stands for the proposition that the term "medical expenses" is not so uncertain or indefinite as to make a judgment unenforceable, the Court's analysis is helpful in as much as the Court examined the meaning of the term in reaching the conclusion that a judgment using the term "extraordinary medical expenses" would be enforceable.

In *Lay,* the wife had filed for dissolution of her marriage in November of 1987. Later that month, the couple entered into a separation agreement that granted custody of the children to the wife and required the husband to be responsible for all extraordinary medical, dental and hospital expenses not covered by his insurance. *Lay,* 912 S.W.2d at 467. Subsequently, the trial court awarded wife the amount of $3,200.06 for extraordinary medical and dental expenses. *Id.* The husband appealed on the basis that "terms of the separation agreement regarding medical expenses were overly vague and indefinite such that the court was without jurisdiction to enforce it." *Id.* The Court noted that while previous case law would seem to agree with husband's claim of error, the Court had previously undercut that case law. *Id.* at 468–69. In disagreeing with the holdings of the cases finding that the term "medical expenses" was too vague to be enforced, the Court quoted the unpublished opinion of Judge Breckenridge in *Lay,* which stated:

Thousands of reasonable average persons have used the words "medical expenses" in their separation agreements and dissolution decrees, with the intention that it embody the phrase's common meaning. The expectation of such persons in utilizing the words "medical expenses" in a dissolution decree is not to have conceptualized each particular medical item to be covered, but rather to have generally incorporated items falling within the limiting criteria of such a definition.

*Id.* at 469–70. The Court then defined "medical" expenses as expenses that are "of, relating to, or concerned with the practice of medicine." *Id.* at 470. "Medicine" was further defined as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease." *Id.* (citing Webster's Third New International Dictionary 1402

(1966)). The court also noted that everyday usage of the term "medical expenses" *"is not the only available standard."* *Id.* The Court then referred to the Internal Revenue Code, section 213, which defines the term as follows:

(d) Definitions.—For purposes of [section 213]

(1) The term "medical care" means amounts paid—

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A), or

(C) for insurance ... covering medical care referred to in subparagraphs (A) and (B).

*Id.* at 470 (quoting I.R.C. § 213(d) (1988)). The Court noted, however, that the Internal Revenue Code would not allow deduction for cosmetic surgery and "[s]imilarly, this Court would construe the term 'medical expenses' to carry with it the implied qualification that the term covers only that conduct that is reasonable and necessary to diagnose, treat, or prevent any ailment or disease that affects the body or a function of the body." *Id.* The Court also noted that the parties are free to define further their medical expense provisions. *Id.*

Father argues that the expenses included in the judgment for accessibility remodeling, car controls, and lost wages are on their face not included in the definition of medical expense. Mother, on the other hand, cites cases that interpret Section 213 of the Internal Revenue Code to indicate that at least the remodeling and car controls would be included in the definition. See *Zipkin v. United States,* 2000 WL 1868945 (D.Minn., Oct. 18, 2000); *Gerard v. Comm'r,* 37 T.C. 826, 1962 WL 1196

(1962) (attached as exhibit "B"). This court appears to support Mother's understanding of medical expenses. A case neither party has cited but which reflects this interpretation of medical expenses is *Eidson ex rel. Webster v. Eidson,* 7 S.W.3d 495 (Mo.App.1999). The mother in that case appealed from a judgment entry for modification of child support, claiming that the trial court erred in its Form 14 calculation in that it failed to include the costs of the child's immediate physical and medical needs. *Id.* at 496.

The court made a specific finding that due to his physical condition, the child has immediate physical and medical need for: (1) a handicap conversion van costing $45,020; (2) a manual wheelchair to fit the child's increase in size costing $3,587; (3) modifications to Mother's home to provide wheel chair accessibility costing $20,000; (4) an additional room with lift equipment and wheelchair accessibility for the child's use costing $20,000; (5) an electric wheelchair costing $15,000; (6) widening and modification of the doorways in Mother's home to provide wheelchair accessibility for the child costing $5,420; (7) other capital improvements and items immediately needed for the child costing $40,000; (8) other extraordinary medical expenses not covered by health insurance including the cost of medical mileage and weekly therapy costing $944 per month; (9) home health care costing $1,354.50 per month; and (10) out of home medical supervised care for two months costing $2,800.

*Id.* at 497. The trial court in its judgment, however, provided only for increased costs of the therapy sessions and required the father to carry insurance and to pay for expenses not covered by the insurance. *Id.* at 500. "The court's judgment did not consider whether and how these nine im-

mediate and necessary physical and medical needs of the child are to be met." *Id.* This court then stated:

> On remand, the court has two options in providing for the payment of the child's necessary expenses. The court may, after considering all of the relevant evidence, include an amount it deems fair and appropriate on line 4e of Form 14 as "extraordinary expenses" associated with rearing the child. See Rule 88.01. Alternatively, the court may, after considering all of the relevant evidence, find that the use of Form 14 in calculating child support would be unjust or inappropriate and may issue a separate order and judgment for the child support amount. See § 452.340, RSMo 1994; Rule 88.01 Directions for Completion of Form 14, line 4d (directing that costs for single occurrence illnesses or injuries should be handled by separate order); *Crews v. Crews*, 949 S.W.2d 659, 668 (Mo.App. W.D.1997) (stating that the court may, in accordance with Form 14, enter a separate order to handle "single-occurrence" illness). To permit the trial court to exercise its complete discretion in fashioning a support order that considers all the needs of the child, the judgment is reversed and the case is remanded.

*Id.* Thus, *Webster* thus took the approach that the cost of accessibility remodeling as well as medical devices to allow a child mobility are covered within the concept of extraordinary medical expense. *Webster* also assumed that home medical care would be included as an extraordinary medical expense.

■ One difference in *Webster* is that the care in that case is described as home *health* care, which would ordinarily mean it was care provided by qualified nurses or health care personnel. Here, Mother chose to take off work to provide for the care of her child. The record does not show that Mother provided medical services. Rather, it was presumably custodial care. The court subsequently awarded compensation as a substitute for her lost wages. Father is correct that if Mother had not otherwise been employed, the court would not have awarded the amount in question to Mother. Father points out that such lost wages for services provided by a parent are not deductible as a medical expense. I.R.C. § 213(d)(11). Also, in *Short v. Short*, 947 S.W.2d 67, 71 (Mo.App. 1997), the Southern District held that time lost from work due to children's illnesses is not an extraordinary expense as contemplated by the notes and comments to Form 14. Accordingly, we hold it was error to include the sum of $8,300.00 in the judgment for Mother's caregiving. Although we have no doubt that the care was very valuable, it was not an extraordinary medical expense. Thus, the judgment will be reversed to the extent that it attempted to reimburse Mother for her lost wages due to time off work.

■ In sub-point (b) of his third point, Father claims that the $20,675.00 lump sum judgment constituted "child support in gross," citing *Wiebusch v. Deke*, 762 S.W.2d 521 (Mo.App.1988). In *Wiebusch*, the trial court ordered the father to pay $4,500.00 in "supplementary child support" to contribute to the child's college expenses. *Id.* at 524. In determining the award amount, the trial court made certain assumptions as to the *future* costs of the child's education at college and the child's continued enrollment. *Id.* The circumstances in *Wiebusch* are very different from those in this case, where the trial court was dealing with the issue of extraordinary medical expenses for expenses already incurred.

Under the current version of Form 14, the court is allowed to include the extraor-

dinary medical expense on the form, or, if the amount is rebutted, to issue a separate order and judgment for the expense that was incurred as a result of a single occurrence injury. Form 14, line 6d comment A; *Webster*, 7 S.W.3d at 500. This contention is denied.

## Unjust Enrichment

In this sub-point, Father argues that "Respondent would be unjustly enriched" by requiring Appellant to pay her the amount of the remodeling expenses and car hand controls. Father points out that the remodeling expenses were paid by a hardship distribution from the employer of Mother's current husband, and from a trust set up for Alex by friends of the family, and by a cash payment from the insurance company. Father notes that all of the expenses were covered by those sources. Therefore, he says, it would unjustly enrich Mother if the judgment of $20,675.00 were to stand. Father relies on two cases in which the principles of unjust enrichment were applied in a child support setting.

In *Ballard v. Hendricks*, 877 S.W.2d 232 (Mo.App.1994), the father appealed from the judgment finding him in contempt and ordering him to pay back child support in the sum of $13,950.00. *Id.* at 233. Father argued that he paid the required child support for about ten years until such time as the child went to live with his grandparents pursuant to a guardianship. *Id.* at 234. The child lived with the grandparents until his mother remarried. *Id.* After rejecting the father's claim of entitlement to credit under the recognized doctrine of substantial compliance, this court turned to father's claim of unjust enrichment. *Id.* at 236. The court noted that there were no Missouri cases that paralleled the unique facts of the case before them, but courts reviewing similar circumstances in other states focused primarily on whether the child had received adequate support and if the award of back support would represent unjust enrichment to the custodial parent. *Id.* In a decision that was fairly fact-limited, this court reversed the portion of the judgment holding father in contempt and ordering him to pay the back child support. *Id.* at 237.

In *Smith v. Smith*, 17 S.W.3d 592, 595 (Mo.App.2000), the father, in relevant part, claimed that the trial court erred in awarding mother $2,550.00, the amount representing the income tax deduction the father took for one of his children. There, the trial court awarded mother the amount of father's dependency deduction. The court noted the benefit father received is not the benefit mother would have received had she taken the dependency deduction. The amount should, therefore, the court said, be recalculated to avoid unjust enrichment. *Id.* at 598.

We fail to see, in this case, that the parties tried the issue of unjust enrichment. At the time Father filed his original reply, the issue of Alex's injuries were not alleged in the petition. When those injuries were alleged, Father filed a request to pay child support directly to Alex and for an account of expenses incurred on behalf of the children. A search for the words "unjust" and "enrichment" in the transcript do not reveal a use of either of those words. No post-judgment motions are included in the legal file. We cannot say this argument was made to the trial court.

If the issue had been raised to the trial court, the trial court might have wanted more detail in connection with that issue, such as whether the funds provided were intended to benefit Alex, or Alex and his Mother and step-Father, or Alex and his Mother and Father. The court also might have wanted to know the exact nature of

the $5,000 insurance payment (which may have been a medical payments reimbursement from the insurance company). Because the issue was not raised with the trial court, the issue has not been preserved for appeal.

### Conclusion

The parties agree that the $400.00 ordered to be paid directly to fifteen-year-old Kate was in error. That portion of the judgment is vacated. The judgment as to $8,300.00 compensation for wages Mother lost in rendering care to Alex after he returned home from the hospital is also vacated. This leaves, by our calculation, extraordinary medical expenses of $12,375.00. In all other respects, the judgment is affirmed. Each party shall bear its own costs on this appeal.

LOWENSTEIN and ELLIS, JJ., concur.