Leonard W. KRANE, Respondent,

v.

Betty Ann KRANE, n/k/a Betty
Ann Goran, Appellant.

No. 78025.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1995.

Susan M. Hais, James P. Carmody, Clayton, for Appellant.

Douglas R. Beach, Deborah C.M. Henry, St. Louis, for Respondent.

COVINGTON, Judge.

Betty Ann Goran appeals from a judgment denying her claim on a Consent Modification Agreement into which she entered with her former husband, Leonard W. Krane. Under the modified agreement, Ms. Goran sought reimbursement for expenses she incurred on behalf of the children, as well as back payment of child support. After a hearing, the trial court awarded Ms. Goran $62,751.30 in past due child support along with $1,000 in attorney fees. Ms. Goran appealed the denial of her other requests for relief. Stating that it would reverse the trial court's judgment, the Missouri Court of Appeals, Eastern District, transferred the cause to this Court under Rule 83.02. Upon order of transfer, this Court addresses the issue that the court of appeals deemed generally interesting and important: whether the language in the consent agreement concerning medical and educational expenses is sufficiently definite to be enforced. The judgment of the trial court is reversed and the cause remanded.

The marriage of Mr. Krane and Ms. Goran was dissolved by a decree entered on July 31, 1987. The trial court awarded Ms. Goran primary physical custody of the couple's two minor children. Subsequently, on August 20, 1990, the couple entered into a consent modification agreement, which the trial court approved. The agreement contained various provisions regarding child support, child custody, and attorney fees. Most pertinent to this action, it contained provisions relating to the educational, medical, and summer camp expenses for the children. Mr. Krane agreed to maintain adequate medical and hospital insurance for the children and to pay one hundred percent of their medical and orthodontic expenses. He was obligated to pay one-half of the cost each year of summer camp for the children, one-half of their elementary or secondary school costs, and one hundred percent of any subsequent increase from the costs of school in 1990.

On December 31, 1991, Ms. Goran filed a "Motion and Affidavit for Determination of Amounts Due and Owing," claiming $17,766.53 for expenses she incurred in paying her children's tuition and summer camp expenses as well as medical, optometric, orthodontic and oral surgery expenses. In addition, Ms. Goran requested that a qualified domestic relations order be entered in the amount of past due child support through January, 1992. Soon thereafter, Mr. Krane consented to pay Ms. Goran a lump sum payment of $71,000 in partial satisfaction of his obligations. Mr. Krane made one payment of child support in February, 1992, but failed to make any more support payments through September 7, 1993.

On June 22, 1993, Ms. Goran filed a "Motion to Reduce Monies due under Modification Order to Judgment." At a hearing on the motion on September 7, 1993, she testified that she sought, in total, $84,268.65 plus statutory interest for past due child support, as well as tuition, summer camp, and medical expenses.

After the hearing, the trial court determined that Mr. Krane owed Ms. Goran $62,751.30 for past due child support only and awarded her attorney one thousand dollars in fees. In denying Ms. Goran's other expense requests, the court specifically found "costs for summer camp as well as paragraph 14(B) of the modification agreement (costs of tuition and choice of Elementary school) to be so indefinite as to amounts owed so as to be unenforceable and thus void." The court did not directly address Ms. Goran's request to reduce her medical expenses to judgment but, by implication, denied the request on similar grounds.

Ms. Goran appeals the trial court's denial of her expense requests. She argues that the trial court erred in holding that the expense clauses were unenforceable and void. She contends that the clauses all contain

"judicially approved limiting criteria" which, when coupled with her uncontroverted testimony as to the actual amounts due, create an enforceable claim for expenses. This Court agrees with her assessment.

## Medical Expenses

Within its child support provisions, the modification agreement contained the following clauses regarding medical, dental and orthodontic costs and expenses:

(d) FATHER will maintain adequate medical and hospital insurance for CAROLYN and JENNIFER and will pay 100% of medical expenses, except that MOTHER will pay all dental expenses, except as provided in (e) and (f) below.

(e) FATHER will pay any orthodontic costs for CAROLYN and JENNIFER, and dental costs which relate to orthodontic work.

(f) FATHER will continue to pay MOTHER $30.00 a month in lieu of dental insurance. However, once FATHER is eligible for dental insurance, he will procure such insurance for CAROLYN and JENNIFER and discontinue the $30.00 per month payment to MOTHER for dental care, and FATHER, thereafter should be responsible for and pay all noncovered dental expenses.

Implicit in the trial court's order is the finding that the "100% of medical expenses" provision is too ambiguous and uncertain to be enforceable.

■ Generally, the law requires that a decree or judgment for money, to be enforceable, must be definite and certain. Traditionally, if a trial court found it necessary to consider external evidence in order to ascertain the specific amounts due under the order, the order was deemed too indefinite to be enforced. *See, e.g., Rodden v. Rodden,*

527 S.W.2d 41, 43 (Mo.App.1975) *overruled by Lay v. Lay,* 912 S.W.2d 466 (Mo.1995); *Loomstein v. Mercantile Trust National Ass'n,* 507 S.W.2d 669, 670–71 (Mo.App.1974) *questioned by Toomey v. Toomey,* 636 S.W.2d 313, 316 (Mo. banc 1982). This Court has relaxed the requirement of definiteness and certainty, however, in the context of dissolution orders and decrees. In *Payne v. Payne,* 635 S.W.2d 18, 22 (Mo. banc 1982), this Court held that a maintenance provision in a dissolution decree, even if facially uncertain in amount, is nevertheless valid so long as "[t]he trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and, then, upon proper application proceed to enforce the judgment." This Court later applied the same standard to child support awards. *Toomey v. Toomey,* 636 S.W.2d 313, 316 (Mo. banc 1982).

Disposition of the issue is controlled by *Lay v. Lay, supra.,* in which this Court held that "medical expenses," as defined by common, everyday usage, supplemented by the Internal Revenue Code's definition of medical care, is sufficiently clear so as to be enforceable. *Lay,* at 470. "[T]his Court would construe the term 'medical expenses' to carry with it the implied qualification that the term covers only that conduct that is reasonable and necessary to diagnose, treat, or prevent any ailment or disease that affects the body or a function of the body." *Id.* at 470. The reasoning in *Lay* applies in this case. *See Id.* at 469–70. Furthermore, the modifier "100%" in the present case is indistinguishable from the modifier "all" in *Lay.*

■ The provision for medical expenses at issue in this case is clear. Ms. Goran adduced sufficient, uncontroverted evidence relating to medical expenses she incurred but which Mr. Krane was obliged to pay.[1] The

---

1. In this case, in order to make the medical expense provision certain, Ms. Goran needed only to adduce evidence regarding the specific amount of the bills Mr. Krane had not paid, which was, in fact, what Ms. Goran did. The hearing below was precisely the type of evidentiary hearing the *Payne* decision contemplates, one in which the amount of support owed is reduced to a sum certain, rather than one in which the nature of the obligation itself is at

issue. Although it is unclear from the record in this case whether Goran also sought to enforce the judgment upon its liquidation with an order of contempt or through other means, a trial court could properly consolidate an enforcement hearing with a *Payne* hearing.

Under the *Payne* portion of the hearing, the focus should be upon determining only the exact amount due. If evidence is required to deter-

trial court's denial of Ms. Goran's motion on the issue of medical expenses is, therefore, reversed.

## Summer Camp and School Costs

Ms. Goran next asserts that the trial court erred in not awarding her judgment against Mr. Krane for one-half the children's school and summer camp expenses. The applicable provisions are set out in the consent modification agreement as follows:

(b) FATHER will pay one-half (½) the cost, including, but not limited to, tuition, fees, books and related expenses (collectively "Costs") each year of any elementary or secondary schools attended by CAROLYN or JENNIFER.... In addition, FATHER agrees to pay one-hundred percent (100%) of any increase in the Costs for elementary or secondary schools attended by CAROLYN or JENNIFER for years after the 1990–1991 school year.

(c) FATHER shall pay one-half the cost of summer camp for CAROLYN and JENNIFER including transportation costs and related expenses.

The trial court specifically found the summer camp and school provisions "to be so indefinite as to amounts owed so as to be unenforceable and thus void." Having addressed the issue upon which the court of appeals transferred the case here, and being in agreement with the court of appeals' disposition of the remaining issues, this Court sets forth verbatim and adopts the portion of the unpublished opinion of the court of appeals in this case, authored by the Honorable Stanley A. Grimm, addressing the remaining issues:

Summer camp expenses are more like school and college expenses than medical expenses. Summer camp expenses are foreseeable and their expense is reasonably determinable for the immediate future. On the other hand, medical expenses are often unforeseeable; it is impossible to determine in advance when or how often they will be incurred, the type of expenses, or how much they will cost.

In the abstract, trial courts and parties might be well advised to be specific in

setting out anticipated future-looking summer camp expenses. In that regard, for example, a provision patterned somewhat like the school provision in *Echele v. Echele*, 782 S.W.2d 430, 437 (Mo.App.1989), could be appropriate.

■ **Here, however, the parties negotiated an agreement that involved existing conditions. At that time, father knew that his daughters were attending summer camps and no doubt had a good idea of their cost. He agreed to pay one-half of that cost; that is "perfectly clear and neither ambiguous nor uncertain."** *See Witzke v. Witzke*, **662 S.W.2d 873, 874 (Mo.App. 1983). He should not be heard to complain for being ordered to pay that which he agreed to pay. The trial court erroneously declared and applied the law when it held that the summer camp provision was so indefinite that it was void and unenforceable.** *Murphy v. Carron*, **536 S.W.2d 30, 32 (Mo. banc 1976).**

We recognize that mother or the daughters might select a more expensive camp than the camp the daughters were attending in 1990, or select a camp at a distant location. In such events, the trial court could fashion appropriate relief. For an example, the trial court could determine the one-half father was to pay by considering, among other things, the current cost of the 1990 camp the daughters attended, plus transportation and related costs, and give father relief from any excess.

We turn now to that part of the agreement concerning school expenses. Following negotiations, father agreed in the Consent Modification Agreement to pay one-half the cost for each year of any elementary or secondary school attended by the daughters. Costs was defined as including tuition, fees, books, and related expenses. The agreement set out the names of the schools the daughters were actually attending and the amount of annual tuition. In addition, father agreed to pay 100% of any increase in costs, so that mother's cost would never be more than one-half of the cost for the 1990–91 school year.

mine the meaning of the provision itself, the

provision is too vague to be enforced.

The facts before us are different than those this court confronted in *Echele.* In *Echele,* one child was in grade school and the other in high school at the time of the trial court's hearing. *Echele,* 782 S.W.2d at 432. The trial court's order concerned the prospect of post-secondary education for the children. Whether the children would attend a state supported or private college or university, or in fact any college, was unknown. *Id.* at 433. As a result, the costs were also unknown. We suggested, as an example, one way to draft a provision that "could subsequently be reduced to pristine certainty, so as to be enforceable." *Id.* at 437.

**■ Here, in contrast, both daughters were attending specific private schools at the time the parties agreed to the Consent Modification Agreement. The tuition cost was not only known, it was set out in that agreement. Father specifically agreed to pay one-half the cost, which for tuition alone in 1990–91 was $6,992.50.**

In addition, the parties anticipated in their agreement that the costs would increase. Father agreed to pay 100% of any increase in costs for elementary or secondary school for the daughters after the 1990–91 school year.

At the hearing, mother testified that Carolyn attends John Burroughs, the same school she was attending when father agreed to the Consent Modification Agreement. Jennifer has changed schools due to her age, but mother testified the cost was "about the same." As with the summer camp expense, father agreed to pay one-half of the daughters' elementary or secondary costs; that is "perfectly clear and neither ambiguous nor uncertain." *See Witzke,* 662 S.W.2d at 874. He should not be heard to complain for being ordered to pay that which he agreed to pay.

The language in the agreement can be "reduced to pristine certainty, so as to be enforceable." *Echele,* 782 S.W.2d at 437. The trial court erroneously declared and applied the law when it held that the tuition and school provision was so indefinite that it was void and unenforceable. *Mur-*

*phy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

Our observation concerning possible "abuse" concerning summer camp expenses applies equally here. Trial courts can consider those issues and fashion appropriate relief as they arise.

In view of our disposition of [the medical expense, summer camp, and school costs issues], we need not address point two. Mother says that point two "is an undisguised plea ... to provide guidance to trial courts and litigants" in this area of domestic relations law.

*The judgment of the trial court is reversed and the cause remanded for proceedings con-*sistent with this opinion.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH and ROBERTSON, JJ., and GUM, Senior Judge, concur.

WHITE, J., not participating because not a member of the Court when case was submitted.