**Julie Anne (Ferber) PRATT,**
**Respondent,**

v.

**David Victor FERBER, III, Appellant.**

**No. WD 72166.**

Missouri Court of Appeals,
Western District.

March 15, 2011.

Gary M. Steinman, Gladstone, MO, for Appellant.

Michael W. Walker, Kansas City, MO, for Respondent.

Before Division II: KAREN KING MITCHELL, Presiding Judge, and JOSEPH M. ELLIS and VICTOR C. HOWARD, Judges.

KAREN KING MITCHELL, Presiding Judge.

David Victor Ferber ("Father") appeals the Circuit Court of Clay County, Missouri's ("motion court") amended judgment of modification of custody, visitation, and child support. We affirm the judgment of the motion court in most respects but reverse the part of the judgment requiring Father to pay half of all of his daughter's extraordinary expenses without any limitation as to the dollar amount and amend the judgment to impose an upper monthly limit on the cost of extracurricular activities each party is to bear at $200.

**Factual and Procedural Background**

On January 21, 2005, the original judgment and decree of dissolution of marriage ending the marriage of Father and Julie Anne (Ferber) Pratt ("Mother") was entered. The judgment awarded the parties joint custody of their daughter ("Daughter"), born August 24, 2003, and designated Mother's address for mailing and educational purposes. It also ordered Father to pay child support to Mother in the amount of $650 per month and ordered that all extraordinary expenses for Daughter's educational, athletic, social, and cultural development be divided equally between Mother and Father, with neither party being required to pay an amount exceeding $50 per month.

On October 27, 2007, Mother filed a motion to modify child support and visitation and a motion for contempt against Father. The motion claimed, inter alia, that Father's income had greatly increased and that Father had not been paying his share of Daughter's extraordinary expenses and non-covered medical expenses. A hearing on the motions was held on August 12th and August 25th, 2009. Both Mother and Father testified at the hearing.

Mother testified that Daughter had participated in swim lessons and other lessons at the YMCA, where she had attended daycare, and that Father had often refused to pay for his half of the lessons. Mother also testified that Father had refused to

pay for half of the cost of Daughter's gymnastics training, which ran $170 per month. A coach from Daughter's gymnasium testified that Daughter was considered to be "gifted" at gymnastics and was enrolled in the pre-competitive program.

Father testified that he was a Kansas City police officer and that, although he had previously worked off-duty security at a local jewelry store, for the Kansas City Royals and the Kansas City Chiefs, and at a City-run tow lot, he could no longer work those extra jobs because of his change in hours with the police department. Father had formerly worked nights with the canine unit and was now working days, five days per week. His off days would vary from week to week.

The motion court's amended modified judgment largely retains the joint physical custody and joint legal custody awards of the original judgment but rejects the presumed calculated child support from Mother's Form 14, finding the amount to be unjust and inappropriate and that, "after consideration of all relevant factors, the reasonable and necessary child support amount is $885.00 per month."[1] The amended modified judgment also allows Mother solely to determine which extracurricular activities are appropriate for Daughter and requires Mother and Father to share the expenses for such activities equally but removes the $50 monthly maximum for these expenses. The amended modified judgment required Father to pay Mother's attorney's fees in the amount of $25,317.35. Finally, relevant to this opinion, the amended modified judgment retains the provision from the parties' original separation agreement, which was incorporated into the original judgment, that required Father to keep a life insurance policy, payable to Father's sister, as trustee for Daughter. Father appeals.

## Standard of Review

We affirm the judgment of the motion court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Bauer v. Bauer,* 38 S.W.3d 449, 455 (Mo.App. W.D.2001). We give great deference to the motion court's factual findings and determination of witness credibility. *Cross v. Cross,* 318 S.W.3d 187, 190 (Mo.App. W.D.2010). A motion court may believe or disbelieve all, or any part of any witness's testimony. *Id.* We view all evidence, and all inferences flowing therefrom, in the light most favorable to the judgment. *Id.*

## Analysis

### I. Extracurricular Activities

Father's first point on appeal is that the motion court erred in declaring that Mother could make all decisions as to Daughter's extracurricular activities while requiring Father to pay for half of those activities with no limitation as to the amount, in that such an order is so vague and uncertain as to be void and unenforceable, because future hearings would be required to determine these expenses.

"Generally, the law requires that a decree or judgment for money, to be enforceable, must be definite and certain." *Krane v. Krane,* 912 S.W.2d 473, 475 (Mo. banc 1995). "Traditionally, if a trial court found it necessary to consider external evidence in order to ascertain the specific amounts due under the order, the order

---

1. There is no evidence that an alternative Form 14 was prepared by the motion court. If one was prepared, a copy was not provided to this court as part of the record on appeal.

was deemed too indefinite to be enforced." *Id.* The requirement of definiteness and certainty has been relaxed, however, in the context of dissolution orders and decrees. *See id.*

Beginning with *Bryson v. Bryson,* 624 S.W.2d 92 (Mo.App. E.D.1981), our courts have enforced maintenance and child support awards, even if it is necessary to look beyond the trial court's order to determine the specific amount due. *Bryson* involved an award of spousal maintenance that required examination of the former husband's earnings to determine the amount of support. *Id.* at 93–94. The maintenance provision had been incorporated into the trial court's decree of dissolution from the parties' separation agreement. *Id.* at 95. Although acknowledging that such an award would have failed for indefiniteness under older Missouri law, *Bryson* held that, because the proper amount of support could be fairly easily ascertained by motion and testimony, the award was enforceable. *Id.* at 97. In reaching this decision, the *Bryson* court addressed the effect of the 1974 Dissolution of Marriage Act. The Act allowed a provision of a separation agreement relating to maintenance or child support to be incorporated into a divorce decree, provided that the court did not find the provision to be unconscionable or that the parties had expressly indicated their desire for the provision not to be incorporated. The court noted that such consent provisions, once incorporated into the decree, are no longer enforceable by a separate contract action. *Id.*[2] It then expressed concern that if such provisions were not enforceable through the decree as a judgment, they would lack any enforcement mechanism, which would leave the beneficiary of the maintenance payments without a remedy. *Id.* Concluding that "[i]t would be anomalous to require incorporation of a maintenance provision of a separation agreement into a decree when to do so would make it void by reason of indefiniteness," the court relaxed the traditional rule regarding certainty of judgments and held that "[t]he trial court may upon motion determine the exact amount due in accordance with the judgment of the parties, and then, upon proper application proceed to enforce the judgment." *Id.* at 98.

The following year, our Supreme Court adopted the *Bryson* approach in a case addressing the enforceability of a dissolution decree that required the husband to pay "all private school or college tuition and housing costs, said sum to total no less than $665 per month." *Toomey v. Toomey,* 636 S.W.2d 313, 315 (Mo. banc 1982). Unlike *Bryson,* the decree in *Toomey* did not incorporate the challenged provision from a separation agreement. Yet the Supreme Court found older cases that required certainty in the amount of a judgment without resort to external evidence, to be "of questionable authority" after *Bryson. Id.* at 316. The *Toomey* court found the challenged order to be valid because if the husband failed to pay, the wife could bring an action for the minimum monthly amount of $665 and could move for modification of the order and introduce evidence of any increased expenses. *Id.*

Although *Toomey* expressly found the philosophy of *Bryson* to be applicable in a case addressing the enforceability of a decree provision that had not been incorporated from a separation agreement, there remained some uncertainty as to how this new "relaxed" standard of certainty applied to orders that were not based upon

---

**2.** This aspect of *Bryson* was called into question by this court in *Hughes v. Davidson-Hues,* 330 S.W.3d 114, 118 n. 4 (Mo.App. W.D.2010). It is cited here for background only.

the terms of a separation agreement. *See Morovitz v. Morovitz,* 693 S.W.2d 189, 190–91 (Mo.App. E.D.1985) (holding that because provision mandating the sale of the marital home had not been incorporated into the decree from the separation agreement, traditional principles of certainty applied and the provision in the decree relating to disposition of the marital home was void and unenforceable). This uncertainty may have been a product of the facts of *Toomey.* Although *Toomey* used broad language in adopting the "philosophy" of *Bryson,* the provision at issue in *Toomey* offered some degree of certainty by setting a monthly minimum amount that the husband was obligated to pay for educational expenses. *Toomey,* 636 S.W.2d at 316. Ultimately, the *Toomey* court held nothing more than that the wife could enforce the stated minimum. If she sought an amount in excess of the minimum, she would have to have filed a motion to modify the order.

Any remaining issues regarding the applicability of the "relaxed" standard of certainty to a provision of a decree that had not been incorporated from a separation agreement were answered by the Eastern District of this court in *Echele v. Echele,* 782 S.W.2d 430 (Mo.App. E.D.1989). In *Echele,* the court directly addressed the issue of whether there is a separate standard of certainty and definiteness for dissolution decrees and orders that incorporate provisions of separation agreements than for those that do not. After an extensive discussion of cases decided since *Bryson,* the Eastern District concluded, "[W]e fail to see any substantial distinction between the incorporation of a settlement agreement in a decree and [a decree], which upon motion and hearing, can be made specific and certain as to the amounts due." *Id.* at 436.

As we perceive it, the present state of the law ... is that ... if a dissolution or modification decree is uncertain or indefinite in the sense that it lacks pristine specificity and (a) a settlement agreement is incorporated in the decree which can make the decree certain by motion or hearing determining the exact amounts due, or [ (b) ] the decree itself can be made certain by motion or hearing to determine the exact amount due by ministerial computation or evidence, the decree, upon being reduced to certainty, is sufficiently certain and definite so as to be enforceable.

*Id.*

■ Pursuant to *Echele,* a decree or order establishing child support is enforceable if it sufficiently identifies the categories of items for which a parent is financially responsible, using limiting criteria so that, although the exact amount owed by the parent cannot be determined from the face of the order or decree, the parent's obligation is not open-ended and the exact amount due can be determined by ministerial computation or evidence presented at a hearing. We find that the standard articulated in *Echele* remains good law. Therefore the issue is whether the provision that requires Father to pay for half of all Daughter's extracurricular activities, as selected by Mother, sets out sufficient limiting criteria to allow computation of the exact amount owed through ministerial computations or evidence presented at a hearing of actual amounts spent. Under the facts of this case, we conclude that it does not.

Although we have found no case directly on point, we find cases addressing provisions making one parent financially responsible for educational costs or the cost of specific activities such as summer camps to be instructive. *Echele* cites cases where the issue was whether provisions of the decree that required husband to "pay for

college education" and to make "all school payments for children" were vague, indefinite, or uncertain so as to be unenforceable. *Id.* at 434 (quoting *Newport v. Newport,* 759 S.W.2d 630, 637 (Mo.App. S.D. 1988), and *Tepper v. Tepper,* 763 S.W.2d 726, 727 (Mo.App. E.D.1989)). Because the phrases used in the order might be interpreted to include "tuition, books, room and board, travel, social activities and a host of other items," the court found the order to be too vague to enforce. *Id.* at 436–37[3] ("The order here ... does not set forth any limiting criteria as to costs at a specific vocational, technical school or state or private college or university. The costs of attending any such institution vary greatly, and, as such, the order is open-ended. In this sense it is vague and indefinite.").

Similarly, in *Fulton v. Adams,* 924 S.W.2d 548, 552 (Mo.App. W.D.1996), this court held that a provision in a modified dissolution decree that required husband to pay one-half of college costs of minor child or one-fourth of her college costs if she attended a private college was vague and indefinite and thus unenforceable. Although the court noted that the requirement of definiteness has been relaxed in support cases, *id.* at 551, it found the order in that case to be deficient because it lacked *any* limiting criteria and the expense of attending such institutions might vary greatly. *Id.* at 551–52. This court also rejected the mother's argument that the facial uncertainty of the order could be remedied by reference to evidence presented at the modification hearing. "An order which is otherwise indefinite and vague does not acquire certainty merely because the court has heard evidence

which, if incorporated into the order, would provide confidence in the amount owed. The vagueness of the order cannot be remedied by searching the record for possible explanations of its meaning." *Id.* at 552.

In the case of a decree that incorporates provisions from a separation agreement, the court may look to the settlement agreement for limiting terms. For example, in *Krane,* 912 S.W.2d 473, an order that incorporated provisions from a separation agreement making the father responsible for "one-half the cost of summer camp for [the children] including transportation costs and related expenses" as well as "one-half [of] ... tuition, fees, books and related expenses ... of any elementary or secondary schools" was found to be enforceable. *Id.* at 476–77. In reaching this decision the Supreme Court noted, "the parties negotiated an agreement that involved existing conditions. At the time, father knew that his daughters were attending summer camps and no doubt had a good idea of their cost.... He should not be heard to complain for being ordered to pay that which he agreed to pay." *Id.* at 476. The *Krane* decision realized that theoretically the mother and children could select a camp in the future that bore a significantly higher cost or involved a greater transportation expense, but the court did not find this possibility to be problematic, stating that the trial court, in such circumstances, "could fashion appropriate relief." *Id.* As to the school, the agreement set out the schools the children were attending and the current tuition. Therefore, the agreement provided suffi-

---

**3.** The court distinguished *Echele* from *Bryson,* 624 S.W.2d at 94 (requiring husband to pay maintenance based on a set percentage of his gross salary); *Toomey,* 636 S.W.2d at 315 (requiring husband to pay college tuition and housing costs and setting a specific minimum monthly payment for education); and *Payne v. Payne,* 635 S.W.2d 18, 20 (Mo. banc 1982) (requiring husband to pay a set percentage of his gross income in maintenance).

cient certainty to be enforceable. *Id.* at 477.

In the case at bar, while it appears that the parties negotiated an even sharing of the cost of Daughter's extracurricular activities prior to the entry of the original dissolution decree, the agreement was based upon a maximum total expense of $100 per month. What is at issue now is an order modifying child support. The modification is not based upon an agreement of the parties and, therefore, we cannot rely on the terms of any agreement to provide for limitations on the breadth of Father's financial responsibility. Although at the hearing Mother testified that the only activity in which Daughter currently participated was the gymnastics, and she provided evidence that the cost of the activity was $170 per month, we cannot incorporate that evidence into the decree to give it greater specificity. *See Fulton*, 924 S.W.2d at 552. Therefore we are left with a decree that requires Father to pay half of all of Daughter's extracurricular activities as decided by Mother. The term "extracurricular activities" is itself extremely broad. Not only is the range of activities that might qualify hard to define, each activity might include a number of different categories of expense (i.e. lessons, camps, equipment, uniforms, or travel). The order in no way limits the types of activities or the categories of resulting expenses. Moreover, because the motion court rejected the Form 14s submitted by the parties and there is no record of whether the motion court completed its own Form 14, we cannot look to a Form 14 for guidance as to what, if any, of the extracurricular expenses may have been included in the base child support award. We hold that under the facts of this case the motion court should have used limiting language to define the scope of the activities covered by the order or, in the alternative, placed some sort of cap on the extraordinary expenses that Father had to pay for Daughter's extracurricular activities, especially since it gave Mother sole discretion to decide which activities would occupy Daughter.[4]

■ We do not, however, find error in the motion court's allowing Mother this discretion. *See Echele*, 782 S.W.2d at 437 (court has "no quarrel" with the mother and children making the decision about where the children attended college). This is particularly appropriate here, where the record establishes that Mother and Father cannot agree as to what Daughter's participation in activities should be. However, some limitation as to the scope of activities and resulting expenses or a cap on the total amount of Father's financial responsibility is necessary to make the order sufficiently certain to be enforceable. Father's first point is granted, and we will amend the judgment to impose an upper limit of $200 per month on the amount of extracurricular expenses each parent must bear (total extracurricular expense not to exceed $400 per month). *See* Rule 84.14 (appellate court may give such judgment as the trial court ought to have given).

## II. Income Imputed to Father

■ Father's second point on appeal is that the motion court erred in imputing income to Father based upon his former off-duty employment in that his work

---

4. We acknowledge that a child's extracurricular activities often change over time, and therefore a judgment addressing the cost of such activities necessarily must incorporate some degree of flexibility. However, when one parent is given unfettered discretion to determine in what activities a child is to participate, the better practice is for the court to create parameters, either through the Form 14 or the judgment, limiting either the scope of the activities covered or the amount of monthly expense.

schedule had changed and he is no longer able to work the off-duty assignments. When ruling on a motion to modify child support, the motion court must: (1) determine and find for the record the presumed correct child support amount by using Form 14; and (2) make findings on the record to rebut the presumed correct amount if the motion court has found that the presumed correct amount is unjust or inappropriate. Rule 88.01. In generating the Form 14 presumed correct amount, the court may impute income to a parent that the court finds is either unemployed or underemployed. *Cross*, 318 S.W.3d at 190.[5]

While Father argues that the trial court erred in imputing income to him from the off-duty jobs that he no longer holds, it is not at all apparent that this is, in fact, what the court did. The motion court rejected the amounts calculated on the Form 14s submitted by the parties, finding them unjust and inappropriate, and instead, "after consideration of all relevant factors," it concluded that the amount of child support "reasonable and necessary" to support the child amounted to $885 per month. Father *does not object* to the court's having "skipped a step" but, instead, argues that the court performed this first step improperly. Because there is no evidence that any income was imputed to Father for the purposes of Form 14's calculation of the presumed correct amount of child support or used to form the basis of the motion court's judgment, Father's second point is denied.

### III. Life Insurance Policy

 Father's third point on appeal is that the motion court erred in requiring Father to maintain a life insurance policy covering himself for the benefit of Daughter. A parent may not be required by a court to provide life insurance benefitting a child, as such would constitute posthumous child support, which is not allowable under Missouri law. *Metro. Life Ins. Co. v. Alcorn*, 674 S.W.2d 115, 115–16 (Mo. App. E.D.1984). However, life insurance covering a parent for the benefit of a child may properly be part of a separation agreement, which would be enforceable if incorporated into the judgment. *See id.*

In this case, the parties' separation agreement provided that Father would maintain a policy for insurance on his life payable to Father's sister as trustee for the benefit of Daughter. Such provisions in a separation agreement are binding on the court entering the judgment of dissolution unless they are unconscionable. *Boden v. Boden*, 229 S.W.3d 169, 172–73 (Mo. App. E.D.2007). Because this aspect of the original judgment was not at issue in the motion to modify, the motion court properly left the provision intact in the amended modified judgment. Father's third point is denied.

### IV. Attorney's Fees

 Father's fourth and final point on appeal is that the motion court erred in granting Mother an award of attorney's fees in the amount of $25,317.35, because the award is not supported by substantial evidence. Trial courts have broad discretion in awarding attorney's fees pursuant to RSMo section 452.355.1. We will only find that a motion court abused its discretion in awarding attorney's fees when the complaining party shows that the court's award was against the logic of the circumstances, and was so arbitrary and unreasonable as to shock the appellate court's

---

5. The court is not required to make an express finding of either the parent's unemployment or underemployment on the record but

*Cross* refers to the factors listed in Comment H of the Form 14 Directions. *Cross*, 318 S.W.3d at 191.

sense of justice. *Bauer*, 38 S.W.3d at 457. The motion court is considered an expert on attorney's fees and may determine when such fees are appropriate, taking into account such factors as: the former spouses' relative financial resources; the conduct of the parties during the marriage; and any unreasonable conduct by either of the former spouses during the dissolution or modification proceedings that may have caused an increase in the amount of the other spouse's legal fees. *Id.*

In this case, Father argues that there is not substantial evidence to support the motion court's $25,317.35 fee award because Mother's counsel's fee statement totals only $24,700.00. Father's argument overlooks the second page of Mother's attorney fee statement that includes costs for items such as filing fees in the amount of $617.35. Therefore, Father's fourth and final point is denied.

### Conclusion

For the above-stated reasons, we reverse the amended modified judgment of the motion court to the extent that it requires Father to pay for half of Daughter's extraordinary expenses without any limitation as to the total monthly amount and amend the judgment to impose a cap of $200 per month on the amount of extracurricular expense that each parent is to bear. We affirm the judgment in all other respects.

JOSEPH M. ELLIS and VICTOR C. HOWARD, JJ., concur.