

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| B.J.E., | ) | No. ED103526 |
| | ) | |
| Appellant/Cross-Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Kristine A. Kerr |
| J.B.E., | ) | |
| | ) | |
| Respondent/Cross-Appellant. | ) | FILED:  September 27, 2016 |

### Introduction

B.J.E. ("Wife") and J.B.E. ("Husband") both appeal from a judgment of the motion court on Husband's motion for contribution from Wife.  This appeal centers on the property distribution in a dissolution judgment dissolving the parties' marriage (the "Property Distribution" and the "Dissolution Judgment").  The Dissolution Judgment required the parties to sell the marital home, apply the proceeds to specific marital debt, and split "equally" any shortfall if the proceeds did not fully satisfy the debt.  Part of the debt was the parties' pre-2007 tax liabilities (the "pre-2007 taxes").  The parties' joint tax attorney settled with the taxing authorities.  Husband paid the full amount of the pre-2007 taxes.  Upon Husband's motion, the motion court ordered Wife to repay Husband for her half of the pre-2007 taxes at a rate of $150 per month until the obligation was satisfied.  (the "payment plan").  On appeal, Wife argues that

the provision of the Dissolution Judgment regarding the pre-2007 taxes was too indefinite to be enforced and further argues that Husband's voluntary payment of the entire tax liability precluded any repayment liability for her half of the tax debt. Husband argues that the motion court lacked authority to stay the judgment and implement a payment plan allowing Wife to repay her half of the pre-2007 taxes over time.

The Dissolution Judgment allocating the parties' debt was sufficiently definite to enforce. Because the voluntary-payment doctrine does not apply, Wife is liable to Husband for her half of the tax debt. Further, the motion court had no authority under Missouri law to modify the initial Property Distribution of the Dissolution Judgment through the monthly payment plan. Thus, the motion court misapplied the law. We reverse that portion of the motion court's judgment instituting the payment plan and remand for proceedings consistent with this opinion.

Factual and Procedural History

Husband and Wife obtained a divorce in 2007. Under the Dissolution Judgment, the trial court divided the couple's assets and debts, and ordered Husband to pay Wife maintenance. The Property Distribution required the parties to sell the marital home. The proceeds from that sale first went to satisfy specific debts, including "income tax liabilities for years prior to 2007." If the home-sale proceeds failed to satisfy the debt, Husband and Wife were ordered to make up such a shortfall "equally."

Years later, Husband filed a motion to modify his maintenance and for contribution[1] from Wife to recover her portion of the pre-2007 taxes. Husband averred that he had "paid, in full, all remaining shortfall indebtedness to the Internal Revenue Service and the State of Missouri."

---

[1] Husband's motion also included a "motion for contempt" and a "Petition In Equity To Apportion Undivided Marital Debts and Recoupment." The motion court analyzed this issue only as a motion for contribution, and we will do the same.

2

Husband sought an order compelling Wife to repay half of the pre-2007 taxes, as contemplated by the Property Distribution.

The motion court granted Husband's motion for contribution. The motion court found that the couple's joint tax attorney had negotiated a settlement for the pre-2007 taxes, after which Husband paid $215,880 and Wife paid nothing. Thus, the motion court concluded that, under the Property Distribution, Wife was required to pay half ($107,940) of the settlement. Despite finding Wife responsible for half of the pre-2007 taxes, the motion court cited equitable reasons and declared that Wife would be responsible for only $10,000.

The parties filed post-judgment motions, and the motion court subsequently amended its judgment. The amended judgment again recognized Wife's responsibility for half of the pre-2007 taxes. The motion court acknowledged that it was bound under the terms of the Property Distribution in the Dissolution Judgment, withdrew its previous order reducing Wife's obligation to $10,000, and entered judgment against Wife in the full amount of $107,940. The motion court then stayed its judgment provided Wife paid the full $107,940 at a rate of $150 per month. Husband was to deduct the $150 monthly payment from his ongoing maintenance payments to Wife. The motion court reasoned that the large imbalance between Husband's and Wife's financial conditions justified the monthly payment arrangement. Both parties appealed to this Court.

Points on Appeal

Wife raises two points on appeal and Husband raises one point in his cross-appeal. Both of Wife's points argue that the motion court erred by ordering her to reimburse Husband for her portion of the pre-2007 taxes. In Point One, Wife argues that the provision in the Property Distribution relating to the pre-2007 taxes was too indefinite to be enforceable. In Point Two,

3

Wife asserts that the voluntary payment doctrine precludes Husband from seeking any repayment of the tax liability from her. On cross-appeal, Husband posits that the motion court lacked authority to modify the original Property Distribution by introducing a payment plan allowing Wife to retire the debt upon her payment of $150 a month.

## Standard of Review

In a court-tried case, the judgment must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). We accord great deference to the motion court's factual findings and credibility determinations. Pratt v. Ferber, 335 S.W.3d 90, 93 (Mo. App. W.D. 2011). "A motion court may believe or disbelieve all, or any part of any witness's testimony." Id. We view the evidence, along with the reasonable inferences therefrom, in the light most favorable to the judgment. Id.

## Discussion

### I. Wife's Point One—Enforceability of the Property Distribution

Wife argues that the motion court erred in ordering her to pay half of the pre-2007 taxes because the original Property Distribution was too indefinite to enforce. We disagree.

Generally, a money judgment must specify with definiteness and certainty the amount for which it is rendered. Krane v. Krane, 912 S.W.2d 473, 475 (Mo. banc 1995). The traditional rule states that, if the trial court found it necessary to consider external evidence to ascertain the specific amount of the order, the order was considered too indefinite to be enforceable. Id. This requirement of definite and certainty has been relaxed in the realm of dissolution orders and decrees. Pratt, 335 S.W.3d at 94.

Our Supreme Court in Payne v. Payne recognized this relaxed standard. 635 S.W.2d 18 (Mo. banc 1982). There, the dissolution decree incorporated the parties' property settlement

4

agreement. Id. at 20. The settlement agreement required the husband to pay the wife maintenance of 15% of his total income for the preceding year, including $120 paid weekly and the remaining money paid quarterly. Id. The wife moved to hold the husband in contempt for failure to pay, and the husband argued on appeal that the judgment improperly required external proof (of his income) to enforce. Id. at 21. The Supreme Court held that a maintenance provision of a decree was valid and enforceable, despite being facially uncertain in amount, because the "trial court may upon motion determine the exact amount due in accordance with the agreement of the parties, and then, upon proper application proceed to enforce the judgment." Id. at 22 (quoting Bryson v. Bryson, 624 S.W.2d 92, 98 (Mo. App. E.D. 1981)).

Subsequently in Krane, a settlement agreement provided that the father would pay 100% of medical expenses, 50% of the cost of tuition and school camp, and 100% of the increase in costs for elementary and secondary schools for the parties' children. Krane v. Krane, 912 S.W.2d 473, 475–76 (Mo. banc 1995). Regarding the medical expenses, the Supreme Court construed "medical expenses" with the implied qualification that the term covered only expenses that were reasonable and necessary as defined by the Internal Revenue Code. Id. at 475. Further, the "100%" qualifier allowed the calculation of the amount due. Id. Thus, the medicalexpenses provision was sufficiently certain to enforce. Id. Regarding the summer-camp costs, the Court found that the costs were existing conditions. Id. at 476. "At that time, father knew that his daughters were attending summer camps and no doubt had a good idea of their cost. He agreed to pay one-half of that cost; that is perfectly clear and neither ambiguous nor uncertain." Id. (Internal quotation marks omitted.) The Krane Court recognized that the mother or the daughters might select a more expensive camp or find other ways to increase the father's costs; in such situations, "the trial court could fashion appropriate relief." Id. Finally, regarding

5

the tuition costs, the Court recognized that the parties knew the current cost of tuition, and that the father agreed to pay 100% of the increase. Id. at 477. Thus, the cost of tuition could be "reduced to pristine certainty, so as to be enforceable." Id. Krane recognized the same problem with tuition as occurred with the summer-camp expenses: the mother could move the daughters to a different, more expensive school that would raise the father's costs. Id. Again, if such a situation occurred, trial court could consider it and fashion an appropriate remedy. Id.

We recognize that Payne and Krane involved settlement agreements regarding maintenance and child support that were incorporated in the trial court's decree. But this relaxed standard also applies to property distributions in contested dissolutions. See Francka v. Francka, 951 S.W.2d 685 (Mo. App. S.D. 1997). After a bench trial in Francka, the trial court ordered the husband to "pay any capital gains taxes which may occur as a result of the failure to properly reinvest the proceeds from the fire." Id. at 698. On appeal, the Court held that the term "capital gains taxes" was no less certain than the "medical expenses" found in Krane, which could be supplemented by the IRS's definition of the term. Id. "The applicable subject for which those taxes might be incurred, the fire insurance proceeds from the destruction of the parties' residence, was readily identifiable." Id. Because the husband was required to pay all of those taxes, and because the subject for which those taxes were based was readily identifiable, the Court found no uncertainty as to what the trial court intended the husband to pay. Id. Thus, the trial court's judgment was not so "indefinite, vague, uncertain and dependent upon a future contingency" as to be unenforceable. Id.

Here, the underlying Dissolution Judgment ordered the proceeds from the sale of the parties' marital home to pay for "[s]ettlement, compromise, payment and conclusion of pending State and Federal income tax liabilities for years prior to 2007." The Dissolution Judgment

6

further provided, "Any shortfall resulting from the [proceeds of the home sale] shall be made up equally by the parties." We find "income tax liabilities for years prior to 2007" no less vague than the capital gains taxes identified in Francka. The relevant subject of the Property Distribution—the amount of the settlement for the pre-2007 taxes—was "readily identifiable." Francka, 951 S.W.2d at 698. In fact, the amount of the tax settlement is not disputed by the parties on appeal: Husband paid $215,880 to settle the pre-2007 taxes. Not only was the amount of the tax settlement readily identifiable, but the Property Distribution identified exactly how much of that settlement Wife was to pay. Wife was responsible for the tax liability "equally." Thus, the motion court was perfectly capable of determining the "the exact amount due" from Wife. See Payne, 635 S.W.2d at 22.

Because the Property Distribution was sufficiently definite under the relaxed standard for dissolution judgments articulated by our Supreme Court, Wife's Point One is denied.

## II. Wife's Point Two—Voluntary-Payment Doctrine

Wife next asserts that the voluntary-payment doctrine precluded the motion court from ordering her to pay half of the pre-2007 tax settlement. Wife correctly notes that Husband paid the total tax liability even though the original Property Distribution required him to pay only half of the liability. Thus, Wife argues, Husband voluntarily paid her portion. We disagree.

The voluntary-payment doctrine is a recognized affirmative defense in actions involving common-law claims for restitution of money. Wiley v. Daly, 472 S.W.3d 257, 261 (Mo. App. E.D. 2015). The well-established doctrine arose out of equitable principles in England and was first expressed by our Supreme Court in Claflin v. McDonough, 33 Mo. 412, 415–16 (Mo. banc 1863). In Claflin, a tax collector demanded that the plaintiffs pay an allegedly illegal tax. Id. at 414–15. Despite believing that the tax was illegal, the plaintiffs paid it anyway because of the

7

tax collector's threat of prosecution.  Id.  Plaintiffs then sued the tax collector for return of the illegal tax.  Id.  Finding for the tax collector, our Supreme Court articulated the basic voluntarypayment doctrine:

> The rule of law is well established, both in England and in this country, that a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back, though the payment is made without a sufficient consideration, and under protest.

Id. at 415.

Under the rule articulated in Claflin, the defendant's voluntary-payment defense is inapplicable if the payment was made after a mistake of fact, after a fraud, or while under duress. Id.  Our courts have created other exceptions, which are not relevant here, where application of the voluntary-payment doctrine violates some public policy.  See Wiley, 472 S.W.3d at 262–63 (detailing situations where the doctrine is inapplicable).  After finding no duress, the Claflin Court reasoned, "the plaintiffs paid the money with a full knowledge of all the facts and circumstances, and well knowing that they were under **no legal obligations to pay it**.  It must, therefore, be regarded as a voluntary payment, and not a payment under duress."  Claflin, 33 Mo. at 416 (emphasis added).

Stating the doctrine differently, someone who makes a payment "is a volunteer if, in making payment, he or she has no right or interest of his or her own to protect and acts without moral or legal obligation."  70 C.J.S. *Payment* § 107 (2016).  The underlying reason for the doctrine is that it is inequitable to give the *payor* the privilege of selecting when and where to challenge the payment.  Huch v. Charter Communications, Inc., 290 S.W.3d 721, 726 (Mo. banc 2009) (relying on Am. Motorists Ins. Co. v. Shrock, 447 S.W.2d 809, 812 (Mo. App. K.C. 1969)).  Giving the payor this control subjects the payee to "the uncertainties and casualties of human affairs likely to affect his means of defending the claim."  Id.

8

Because the potential payor lacks a legal duty to pay in these situations, the payor's remedy to an illegal demand of payment is to refuse payment and to assert the lack of a legal obligation as a defense if sued for that payment. What the payor cannot do is make a payment he or she is not obligated to make and then sue for return of that payment.

For example, in Jurgensmeyer v. Boone Hosp. Ctr., the plaintiff's adult son needed treatment at the defendant hospital. 727 S.W.2d 441, 443 (Mo. App. W.D. 1987). The plaintiff paid for his adult son's medical expenses, but then sued the hospital later to recover the payment. Id. The Western District affirmed the trial court's dismissal of the suit. Id. at 444. The plaintiff was not liable for the medical bills because his son was an adult. Id. Further, because the plaintiff failed to properly plead[2] any allegations of fraud or duress, it could "only be concluded that [the plaintiff] made payment as a volunteer." Id.

In Smith v. City of St. Louis, Smith received a ticket from an automated red-light camera and paid the fine. 409 S.W.3d 404, 419 (Mo. App. E.D. 2013). Smith subsequently sued the city for unjust enrichment, seeking to recover the fine paid on the grounds that the ordinance permitting the red-light camera was illegal. Id. Smith admitted that she "decided just to pay the violation and move on." Id. at 421. "While Smith's decision to pay the fine very well may have amounted to surrendering to the bureaucracy of municipal government, her testimony supports but one finding: that her decision to pay the fine was voluntary." Id. Because Smith voluntarily paid her fine to the city, rather than refusing to make payment and asserting the ordinance's invalidity as a defense to the fine, the voluntary-payment doctrine precluded her from recovering the fine in a later suit. See id.

---

[2] The plaintiff, on appeal, argued that he paid under duress because the hospital conditioned treatment of his son on his payment of the medical expenses. Id. at 443–44. The Court rejected this argument because of a pleading deficiency. Id.

9

Here, Wife claims that Husband's payment to the taxing authorities was also voluntary. This argument is unavailing because the parties concede that Husband and Wife are jointly liable for the full amount of the pre-2007 taxes. Husband's payment was different than Chaflin, Jurgensmeyer, and Smith because he was not a volunteer. Wife does not suggest that the pre-2007 taxes were somehow illegal or unenforceable against both Husband and Wife. Further, Husband did *not* pay a portion of the taxes for which *only* Wife was liable. While the Property Distribution required the parties to share the pre-2007 taxes "equally," that order did not change the rights of the taxing authorities. The taxing authorities were entitled to collect the full amount of the tax liability from either party because Husband and Wife were jointly liable on the debt. By making payment, Husband (the payor) was protecting his interests and satisfying his tax burden, which he was under a legal obligation to do. See 70 C.J.S. *Payment* § 107 (a volunteer "has no right or interest of his or her own to protect and acts without moral or legal obligation"). Thus, Husband cannot be considered a "volunteer."

Because the voluntary-payment doctrine is inapplicable here, the motion court committed no error. Wife's Point Two is denied.

## III.     Husband's Point—Payment Plan

The motion court, bound by the Property Distribution set forth in the Dissolution Judgment, ordered Wife to repay Husband for half of the pre-2007 tax settlement. But the motion court then stayed the judgment and allowed Wife to make installment payments of $150 per month. Husband argues that the motion court lacked authority to stay the judgment and institute this payment plan because such action effectively modified the original Property Distribution of the final Dissolution Judgment, which the motion court may not do. We agree.

10

We begin with the premise that the division of marital property in a dissolution judgment is final and is not subject to future modification. Sections[3] 452.330.5[4] and 452.360.2. Provisions in a dissolution judgment concerning the eventual sale of a marital home and the distribution of the resulting proceeds are considered a division of marital property. Stark v. Thierjung, 714 S.W.2d 830, 832 (Mo. App. E.D. 1986). The motion court reluctantly acknowledged this fundamental principle by reversing its initial ruling that Wife was responsible to pay only $10,000 of her $107,940 tax liability.

We therefore consider whether the motion court—by staying the judgment and creating this payment plan—modified the Property Distribution of the Dissolution Judgment. The Property Distribution required the proceeds of the home sale to be applied to settlement of "tax liabilities for years prior to 2007." Any "shortfall" from the application of the home-sale proceeds to the tax settlement was to "be made up equally by the parties." The parties' joint tax attorney settled the pre-2007 tax liabilities with the taxing authorities, which Husband subsequently paid in full. The motion court has ordered Wife to pay half of the pre-2007 tax settlement, but stayed execution of the order provided Wife pays $150 per month to Husband towards her half of the tax liability. Husband argues that the payment plan constituted a modification of the underlying Property Distribution. We cannot find, and the parties were unable to provide, any cases factually on point.

Husband suggests Schaffer v. Haynes, 847 S.W.2d 814 (Mo. App. E.D. 1992) as guidance. In Schaffer, the parties entered into a marital settlement agreement, which provided wife receive a $70,000 payment, reduced by the relevant taxes, upon the sale of a building that

---

[3] All statutory references are to RSMo (2000).
[4] A limited exception to this rule, for qualified domestic orders, is not relevant to this appeal.

was under contract. Id. at 816. Husband later moved to set aside this payment because of mutual mistake: the parties originally thought the building would yield profits of over $300,000, but the profits were only $18,833. Id. The motion court agreed, found that a $70,000 payment would be "inequitable and unfair," and reduced the payment due to wife to $3,164. Id. at 817. On appeal, we emphasized that the underlying divorce decree, which incorporated the property settlement agreement, contemplated a gross payment of $70,000 minus applicable taxes. Id. We reasoned that the motion court's order was "essentially a modification of the distribution of marital property," which was strictly forbidden by statute. Id. Because the motion court improperly modified the amount due to wife under the original judgment, we reversed. Id.

Schaffer is not entirely on point because it is factually distinguishable. Schaffer makes clear that a motion court lacks authority to modify express obligations under a dissolution's property distribution, even if such obligations are "inequitable and unfair." 847 S.W.2d at 817. In Schaffer, the motion court changed the actual amount due to wife under the property settlement agreement. Changing the original judgment's express terms was clearly a "modification" of the property distribution. We are cognizant that, here, the motion court ordered Wife to pay the full amount as required by the Property Distribution ($107, 940), and did not modify the express language of the Property Distribution.

Wife offers two cases, Burbes and Hurtgen, as support for its position that the "trial court is vested with broad equitable powers in a marital dissolution to effectuate property settlements." Burbes v. Burbes, 739 S.W.2d 582, 585 (Mo. App. E.D. 1987); see Hurtgen v. Hurtgen, 635 S.W.2d 69, 70 (Mo. App. E.D. 1982). We agree. However, this proposition is true *in an original dissolution proceeding*. In Burbes, the trial court awarded the husband a $25,000 judgment lien against the equity on the marital home, which was awarded to the wife. 739

12

S.W.2d at 585. But the trial court stayed execution until "60 days after the occurrence" of one of a series of conditions. Id. We affirmed the trial court's decision to stay its judgment and implement conditions on the execution of the judgment lien because of the trial court's broad discretion in such matters. Id. at 585–86. In Hurtgen, we affirmed the trial court's suspended execution of a judgment lien on the marital residence until the couple's child reached eighteenyears old. 635 S.W.2d at 70.

Notably in both Burbes and Hurtgen, we deferred to the trial court's discretion to fashion the terms of the *original* marital property distribution. Here, the motion court attempted to exercise similar discretion—to stay execution of a judgment based on certain conditions. Yet the motion court did so in a post-dissolution proceeding. In Schaffer, we admonished the motion court for considering the equity and fairness of an original property distribution in a post dissolution proceeding. The General Assembly has made clear, in two separate statutes, that an original property distribution is final and not subject to modification. Sections 452.330.5 and 452.360.2. This strict and unequivocal mandate of the legislature deprives a motion court of any discretion to alter an original property distribution in post-dissolution proceedings. We are persuaded that a motion court sitting in a post-dissolution proceeding must enforce an original property distribution as written.

As written, the Property Distribution in the Dissolution Judgement required Husband and Wife to equally share the pre-2007 tax liability. The judgment was silent about any stay or other terms and conditions of payment. Under the Property Distribution, Husband was entitled to enforce Wife's obligation to share "equally" in the pre-2007 tax burden without restriction. In the absence of controlling authority to the contrary, we hold that the motion court's introduction of terms and conditions not included in the Dissolution Judgment substantially altered Wife's

13

obligation under the Property Distribution.[5]  As such, we hold that the motion court's payment plan effectively modified the original Property Distribution in a post-dissolution proceeding. The fact that the motion court's order and judgment were entered in response to Husband's motion for contribution does not alter the fact that the stay of judgment and terms of payment imposed by the motion court effectively and substantially changed the Property Distribution to which Husband is entitled under the Dissolution Judgment.  The motion court lacked authority to make such a modification.  Sections 452.330.5 and 452.360.2.

Because the payment plan improperly modified the Property Distribution, the motion court exceeded its authority under statute.  Husband's point is granted.

Conclusion

The judgment of the motion court is affirmed in part, reversed in part, and the case is remanded for proceedings consistent with this opinion.

_____
KURT S. ODENWALD, Judge

James M. Dowd, P.J., concurs.
Gary M. Gaertner, Jr., J., concurs.

---

[5] Under the payment plan instituted by the motion court, Wife's obligation would not be satisfied for approximately 60 years.